**Preston BOWN and Olive Bown, Plaintiffs and Respondents,**

v.

**McKay M. LOVELAND, Defendant and Appellant.**

**No. 18686.**

Supreme Court of Utah.

Feb. 1, 1984.

---

1. 19 Am.Jur.2d Corporations § 675.

2. *Id.* at § 676.

3. 18 C.J.S. Corporations § 550g.

Richard L. Bird, Jr., David J. Bird, Salt Lake City, for defendant and appellant.

George K. Fadel, Bountiful, for plaintiffs and respondents.

HALL, Chief Justice:

Plaintiffs Preston and Olive Bown brought this action seeking construction of a warranty deed that they executed in favor of defendant McKay Loveland. Loveland appeals from a decision of the district court which found that the transaction was a consumer-related loan covered by the Utah Uniform Consumer Credit Code, that the deed was intended to be an equitable mortgage and that the transaction was unconscionable. The court further reformed the deed. We affirm in part and reverse in part.

In March, 1978, the Bowns executed a trust deed on the north 466 feet of real property owned by them in Davis County, Utah, to MFT Leasing to secure a lease on a bulldozer to be used in a stone-cutting business. When the Bowns defaulted in their payments on the loan, MFT commenced foreclosure proceedings. Approximately two weeks before the scheduled trustee's sale, Preston Bown approached Loveland, a realtor for whom Bown had done work in the past, and offered to sell him the south end of the Bowns' property in order to raise the money to pay off MFT. Loveland declined to buy. On February 10, 1981, the day before the trustee's sale, Bown again contacted Loveland in an effort to arrange a deal to prevent foreclosure by MFT. Loveland agreed to rescue Bown from the foreclosure action only if Loveland could double the money he put up in the transaction. Pursuant to their agreement, Loveland paid MFT the amount owed on the loan ($23,403.76) and received an assignment of the lease on the bulldozer and the trust deed. Bown then executed a warranty deed to Loveland conveying both the north and south portions of the Bowns' property, subject to an oral option to repurchase for approximately $50,000 within six months. Soon after this transaction, Loveland placed "For Sale" signs on the property, and potential purchasers were referred to him. The Bowns' son continued to live on the property rent-free.

Nearly eight months after the warranty deed was signed, Loveland informed the Bowns that he intended to sell the property and that the repurchase option would expire on October 5, 1981. The Bowns thereupon brought this action to construe the warranty deed, claiming that the transaction was not a sale but a mortgage.

I.

The trial court found that the Bowns did not intend the south portion of the property to be included in the warranty deed and that Loveland did not know it had been included until after the deed was recorded. The court therefore ordered that the south portion be deleted from the deed.

■ A warranty deed executed without any reservations conveys in fee simple all of the rights and interests the grantor has in the premises therein described.[1] To reform a written warranty deed or any written instrument, the plaintiff must show mutual mistake of the parties or mistake on the part of one and fraud or inequitable conduct on the part of the other, as a result of which the instrument reflects something neither party had intended or agreed to.[2] Proof of the mistake must be presented by clear and convincing evidence.[3] A party seeking reformation of a deed due to mutual mistake must plead such mistake with particularity.[4]

In the Bowns' complaint, neither mistake nor fraud was pled, much less described with particularity. The only mention made in the complaint of the inclusion of the south portion of the property in the warranty deed and the one the Bowns rely on to support their claim of having pled with particularity was in the context of a recitation of fact: "As additional security the defendant required the plaintiffs to execute a deed prepared by the defendant, who is a realtor, to the property covered by the Trust Deed, plus additional property adjoining thereto." This statement does not allege mistake. Rather, it appears to be an admission that there was no mistake.

Rule 15(b), Utah R. of Civ.P., provides that when issues not raised by the pleadings are tried by the express or implied consent of the parties, those issues should be treated as if they had been raised in the pleadings. However, in this case there is no evidence in the record to indicate that both parties implicitly understood that the issue of mistake of description in the warranty deed was being tried. Justice requires that if an issue is to be tried and a

party's rights influenced thereby, that party must have notice of the issue and an opportunity to meet it.[5] Those elements are lacking here.

■ Furthermore, the record does not reflect that mistake was raised in the context of the trial. The pretrial order listing the issues to be tried does not mention specifically or by implication the question of mistake or deed reformation. Plaintiffs did not raise mistake during the trial and did not argue mistake or reformation in their post-trial memorandum. On this basis alone, reformation of the deed was improper.

Finally, the evidence in the record in any way relating to the intent of the parties as to the description of the land to be conveyed does not rise to the standard of clear and convincing that is required to reform a deed showing no ambiguity on its face. In fact, the evidence is to the contrary. Both explicit testimony and the logic inherent in the transaction indicate that Loveland intended to acquire the entire piece of property subject to the Bowns' option to repurchase and that the Bowns understood this to be the case.

Therefore, since mutual mistake of fact was neither pled nor proven by clear and convincing evidence, the remedy of reformation of the warranty deed was improper.

## II.

Loveland also contends that the finding of the trial court that this transaction was a consumer-related loan governed by the Utah Uniform Consumer Credit Code, U.C.A., 1953, §§ 70B–3–602 to –604, and thus subject to a maximum 18 percent interest is in error.[6] U.C.A., 1953, § 70B–3–

1. U.C.A., 1953, § 57–1–12; *see also Hatch v. Bastian,* Utah, 567 P.2d 1100 (1977).

2. *Thompson v. Smith,* Utah, 620 P.2d 520 (1980).

3. *Hatch, supra* note 1, at 1102.

4. Rule 9(b), Utah R.Civ.P.; *see also Neeley v. Kelsch,* Utah, 600 P.2d 979 (1979).

5. *See, e.g., Williams v. State Farm Ins. Co.,* Utah, 656 P.2d 966 (1982).

6. U.C.A., 1953, §§ 70B–3–602 to –604 were repealed by the 1981 Utah State Legislature. Laws of 1981, ch. 279, § 8. However, pursuant to Art. VI, § 25 of the Utah State Constitution, the repeal does not take effect until 60 days after adjournment, unless otherwise provided. The repeal was approved March 25, 1981, with no effective date provision. Therefore, §§ 70B–3–602 to –604 were in effect when this transaction took place: February 10, 1981.

602 provides that a "consumer related loan" is "a loan which is not subject to the provisions of this act applying to consumer loans and in which the principal does not exceed $25,000; if the debtor is a person other than an organization."

U.C.A., 1953, § 70B–3–104 defines a "consumer loan" as:

[A] loan made by a person regularly engaged in the business of making loans in which

(a) the debtor is a person other than an organization;

(b) the debt is incurred primarily for a personal, family, household, or agricultural purpose;

(c) either the debt is payable in installments or a loan finance charge is made; and

(d) either the principal does not exceed $25,000 or the debt is secured by an interest in land.

■ This transaction is clearly not a consumer loan since Loveland, a realtor, is not regularly engaged in the business of making loans [7] and the debt was not incurred by the Bowns primarily for a personal, family, household, or agricultural purpose, but for use in a stone-cutting business.

The Comment of Commissioners on Uniform State Laws suggests the purposes for which § 70B–3–602, defining a consumer-related loan, was drafted:

Many relatively small credit transactions with individuals do not fall within the general provisions of the act because the purpose of the transaction is not personal, family, household, or agricultural. However, a debtor in a small transaction for a business purpose may need some protection in credit transactions. Therefore, Part 6 of this Article extends a measure of protection over a special category of relatively small loans defined as consumer related loans. The principal transactions covered are (1) a loan by a lender not regularly engaged in making similar loans, (2) a loan to an individual for a business purpose, and (3) a loan to an organization . . . .

■ Accordingly, the first thing to be determined is whether this transaction constitutes a loan. U.C.A., 1953, § 70B–3–106 defines "loan" as including: "(1) the creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third party for the account of the debtor . . . ." Thus, a loan is made when a creditor creates debt by advancing money to a person on behalf of the debtor.[8]

■ There is no question that both Loveland and the Bowns understood the payment of $23,403.76 to MFT to be on behalf of the Bowns. Both parties testified that the payment was to be paid to MFT to rescue the Bowns from the foreclosure action.

The question thus remains whether the payment to MFT by Loveland on behalf of the Bowns creates debt. "Debt" has been defined variously, but generally it is an obligation to pay a fixed and certain sum of money.[9]

The Bowns owed a debt of $23,403.76 to MFT Leasing. As a result of his $23,-403.76 payment to MFT, Loveland received an assignment of MFT's interest as lessor of the bulldozer and assignment of the trust deed. Thus the sum certain debt owed by the Bowns to MFT became a sum certain debt owed by the Bowns to Loveland.

Further, both parties understood that if Loveland advanced the $23,403.76 to MFT, the Bowns would owe Loveland approximately double that amount.[10] Therefore, a

---

7. *Bekins Bar V Ranch v. Huth,* Utah, 664 P.2d 455 (1983).

8. Comment of Commissioners on Uniform State Laws.

9. *See, e.g., Burke v. Boulder Milling & Elevator Co.,* 77 Colo. 230, 235 P. 574, 575 (1925).

10. This type of transaction is exactly the type of transaction that the Utah Uniform Consumer Credit Code and § 70B–3–602 were enacted to cover: a small businessman, needing credit, and subject to usurious demands by a lender if not given some protection. *See also* U.C.A., 1953, § 70B–1–102, Purposes—Rules of Construction.

fixed and certain sum of money was due and owing by the Bowns to Loveland and a debt was created.

Finally, Loveland, while disclaiming creation of a debt, contends that the warranty deed executed on his behalf was intended as payment of the debt secured by the trust deed. While we reject this contention, *infra,* the point to be made here is that payment of a debt does not make the fact that there was a debt disappear.

This transaction was clearly a consumer-related loan. Therefore, under the provisions of 70B–3–604(1), default charges in this case are limited to: "(a) reasonable attorney's fees and reasonable expenses incurred in realizing on a security interest; (b) deferral charges not in excess of 18 per cent per year of the amount deferred for the period of deferral; and (c) other charges that could have been made had the loan been a consumer loan."

█ Section 70B–3–604(2) provides that, with respect to consumer-related loans, the parties may not contract for default charges in excess of those provided in the Act. Therefore, the parties' apparent oral understanding that Loveland was to double his money in return for the loan has no validity as a contract and the provisions of § 70B–3–604(1) govern.

### III.

Loveland also contends that the trial court erred in finding that the warranty deed executed by the Bowns to Loveland was a mortgage intended as security for the loan.

█ This aspect of the case is essentially one in equity since the Bowns, in asking the court to give the warranty deed and option to repurchase the effect of a mortgage, are seeking equity.[11] It has long been recognized that a deed, absolute in form, may be construed as a mortgage if it is intended as security under a parol agreement rather than an outright conveyance.[12] Parol evidence is admissible to show the purpose and intent of parties to a deed.[13] The burden of proof is on the party claiming a mortgage, here the Bowns, to show by clear and convincing evidence that the conveyance was intended as a mortgage.[14]

█ Some of the elements to be considered in determining whether an absolute deed is intended as a mortgage include: Whether or not there was a continuing obligation on the part of the grantor to pay the debt or meet the obligation which it is claimed the deed was made to secure; the question of relative values; the contemporaneous and subsequent acts; the declarations and admissions of the parties; the form of the written evidences of the transactions; the nature and character of the testimony relied on; the various business, social, or other relationship of the parties; and the apparent aims and purposes to be accomplished.[15]

█ The standard of appellate review of findings in equity cases, even where the level of proof in the trial court is "clear and convincing evidence," is the "clearly preponderates standard."[16] Under that standard, after reviewing the evidence in this case in light of the elements set forth, we are unable to conclude that it clearly preponderates against the finding of the district court on this issue.

█ For example, the evidence reveals that, first, the property covered by the warranty deed was appraised for over

**11.** *Willard M. Milne Inv. Co. v. Cox,* Utah, 580 P.2d 607 (1978).

**12.** *W.M. Barnes Co. v. Sohio Natural Resources Co.,* Utah, 627 P.2d 56 (1981); *see also Kjar v. Brimley,* 27 Utah 2d 411, 497 P.2d 23 (1972); *Corey v. Roberts,* 82 Utah 445, 25 P.2d 940 (1933).

**13.** *Sohio, supra* note 12.

**14.** *Baker v. Taggart,* Utah, 628 P.2d 1283 (1981).

**15.** *Hansen v. Kohler,* Utah, 550 P.2d 186, 188 (1976). *See also Baker, supra* note 14; *Cox, supra* note 11.

**16.** *Abbott v. Christensen,* Utah, 660 P.2d 254, 257 (1983).

$100,000. Therefore, the payment of $23,-403.76 appears to be inadequate consideration to support a sale thereof. Second, both parties understood that there was a continuing obligation on the part of the Bowns to pay Loveland double his investment. Third, both written and oral evidence indicated that both Loveland and the Bowns operated under the assumption that if there was a sale of the property, Loveland was entitled to only double the $23,-403.76 plus expenses. The remainder belonged to the Bowns. Fourth, the Bowns' son and his family continued to live on and use the property rent-free after transfer of the warranty deed. All of this evidence points to the intent of the parties that the warranty deed was intended to be a mortgage.

No useful purpose would be served by further analysis of the evidence as it relates to the intention of the parties at the time the deed was executed and delivered. Suffice it to say that the Court remains unpersuaded that the evidence clearly preponderates against the finding of the trial court that the warranty deed was intended as a mortgage. Having so concluded, we do not reach the issue of whether the transaction was unconscionable.

The judgment of the trial court is affirmed except that its order of reformation of the deed is vacated and set aside. No costs awarded.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.