### A. Wayne WINEGAR and Mary Winegar, his wife, Plaintiffs and Appellees,

### v.

### FROERER CORP., a Utah corporation; P.F. Investments, a Utah limited partnership; and Fredrick Froerer, III, Zane Froerer, and Phyllis Froerer, individuals, Defendants and Appellants.

### No. 890160.

#### Supreme Court of Utah.

#### May 17, 1991.

---

David R. Olsen, Paul M. Simmons, Salt Lake City, for Froerer Corp.

Joseph S. Knowlton, Salt Lake City, for Winegars.

DURHAM, Justice:

Plaintiffs Wayne and Mary Winegar brought this action against the assignee of an executory land sale contract of which they were purchasers. They sought to rescind the contract and to receive a judgment for the amount they had paid under the purchase agreement. The district court granted their motion for summary judgment. We reverse.

In 1979, the Winegars entered into an agreement to purchase property in Duchesne County, Utah. The agreement provided that upon payment in full of the purchase price, Ranch Liquidators of Utah, Inc. ("Ranch Liquidators"), the sellers of the property, would deliver to the Winegars a warranty deed and a title insurance policy. In 1980, Ranch Liquidators assigned that contract to Froerer Corporation ("the Froerers") as part of a larger transaction in which the Froerers purchased twenty-three executory land sale contracts from Ranch Liquidators in the same area. At the time of the assignment, Ranch Liquidators also gave the Froerers a warranty deed to the property named in the Winegars' agreement. The Froerers did not then record the deed, but kept it in their office.

The Froerers and Ranch Liquidators first signed an agreement in April 1980, giving the Froerers limited recourse against Ranch Liquidators for claims by the real estate buyers for any consideration that was not Ranch Liquidators' responsibility under the original land sale contracts. The assignment agreement, executed in June 1980 between Ranch Liquidators and the Froerers, transferred Ranch Liquidators' "right, title, interest and equity" in the purchase agreement between Ranch Liquidators and the Winegars. The Froerers accepted the assignment "subject to the covenants and conditions contained in the [original land sale agreement]." No mention was made of whether the parties intended to assign Ranch Liquidators' obligations and liabilities under the contract. Similarly, the agreement failed to mention what the parties intended when Ranch Liquidators gave the Froerers the warranty deed.

The Winegars paid all remaining payments on the purchase agreement to the Froerers and completed paying on the contract in May 1984. When the Winegars demanded a warranty deed for the property from the Froerers, the Froerers instructed them to request the deed from Ranch Liquidators. Ranch Liquidators was unable to convey the property to the Winegars, however, because it had conveyed the property to a third party by quitclaim deed in 1982. Because the Winegars had never recorded their interest under the purchase agreement and the Froerers had never recorded the warranty deed, Ranch Liquidators' 1982 quitclaim conveyance was valid. In an unsuccessful effort to resolve the dispute, the Froerers gave the Winegars the unrecorded warranty deed the Froerers had received from Ranch Liquidators. The Winegars recorded this deed together with a quitclaim deed executed by the Froerers to them.

In August 1987, the Winegars brought this action against the Froerers, alleging that the Froerers (1) negligently failed to record the warranty deed, allowing the property to be deeded to third parties, (2) negligently failed to make payments to the fee owner, allowing the property to be foreclosed, (3) were unjustly enriched by the amounts it had received under the purchase agreement, and (4) breached the purchase agreement by failing to provide the Wine-

gars with a warranty deed and title insurance.

In their motion for summary judgment, the Winegars sought to rescind the purchase agreement they had originally entered into with Ranch Liquidators[1] and requested a judgment for the amount they had paid under the purchase agreement.

In response to the Winegars' motion, the Froerers submitted the affidavit of Fredrick Froerer, III, which stated that (1) the assignment to the Froerers was an assignment only of the rights to receive payments due under the purchase agreement, (2) the Froerers never agreed to assume Ranch Liquidators' liabilities under the purchase agreement, and (3) the Froerers did not intend acceptance of the assignment to constitute an assumption of Ranch Liquidators' liabilities. The Winegars did not submit any affidavits disputing Mr. Froerer's testimony, relying instead on the documents appended to their brief.

By a minute entry dated January 31, 1989, the trial court granted the Winegars' summary judgment motion "as prayed" based on "the rationale submitted and argued by the plaintiff" in support of the motion, which the court found to be "the more reasonable under the facts and ... more in support of the apparent intent of the parties."

On appeal, the Froerers argue that because they were not parties to the original purchase agreement between Ranch Liquidators and the Winegars, they had no obligation to convey clear title to the Winegars under that agreement unless they specifically assumed such an obligation. The Froerers argue that the agreements between Ranch Liquidators and themselves show no intent to assign liabilities, or at least are ambiguous as to whether such an assumption was intended. The Froerers also argue that the trial court erred in concluding, without considering the parties' intent, that there was an unconditional delivery of the warranty deed to them, conveying title. The Froerers assert that the trial court should have allowed parol evidence as to the intent of the parties on both issues.

The issues we must address on appeal are (1) whether the assignment between Ranch Liquidators and the Froerers clearly assigned the duties as well as the benefits of the executory contract, and (2) whether giving the Froerers the warranty deed, as a matter of law, conveyed title to the property.

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Allen v. Ortez*, 802 P.2d 1307, 1309 (Utah 1990). In reviewing the trial court's ruling, we accept the facts and inferences in the light most favorable to the losing party. Because summary judgment is granted as a matter of law, we may reconsider the trial court's legal conclusions. *Farmers New World Life Ins. Co. v. Bountiful City*, 803 P.2d 1241, 1243 (Utah 1990).

We first address whether the trial court properly concluded, as a matter of law, that the Froerers assumed Ranch Liquidators' liabilities under the purchase agreement when they accepted an assignment of the agreement. We begin our analysis by reviewing applicable assignment principles.

■ An assignment is the transfer of rights; a delegation is the transfer of duties. *First American Commerce v. Washington Mut. Sav.*, 743 P.2d 1193, 1194 (Utah 1987) (citing J. Calamari & J. Perillo, *Contracts* § 18–24 (2d ed. 1977)). Generally, all beneficial rights under an executory contract are assignable. *Wohlschlegel v. Uhlmann–Kihei, Inc.*, 4 Hawaii App. 123, 662 P.2d 505, 514 (1983) (citing 6 Am.Jur.2d *Assignments* § 9 (1963)). Absent an assumption of liability, however, the assignment of a contract does not impose on the assignee the assignor's duties or liabilities under the contract. *See Murr v. Selag Corp.*, 113 Idaho 773, 747 P.2d 1302, 1309 (Ct.App.1987); *Wohlschlegel v. Uhlmann–Kihei, Inc.*, 662 P.2d at 514; *see also Higgenbotham v. Topel*, 9

---

**1.** Ranch Liquidators was not made a party to    this litigation.

Wash.App. 254, 511 P.2d 1365, 1368 (1973) (requiring assignee to *expressly* assume assignor's obligations); *Cuchine v. H.O. Bell, Inc.*, 210 Mont. 312, 682 P.2d 723, 725 (1984) (assignee liable only if it is "clearly shown that the assignee . . . expressly or impliedly assumed the assignor's liability").

■ In *Radley v. Smith*, 6 Utah 2d 314, 313 P.2d 465, 466–67 (1957), we stated that whether an assignment of the entire contract includes an assumption of liabilities depends on the terms of the assignment and the parties' intent. We noted that whenever uncertainty or ambiguity exists with respect to the assumption, "it is proper for the court to consider all of the facts and circumstances, including the words and actions of the parties forming the background of the transaction." *Id.* The burden of proof is on the party who asserts that there has been an assumption of the assignor's liabilities to show assumption by "clear and unequivocal" evidence. *Murr*, 747 P.2d at 1309 (citations omitted).

■ An assignment is interpreted according to the rules of contract construction. *See Farr v. Link*, 746 P.2d 431, 433 (Wyo.1987). In interpreting a contract, the intentions of the parties are controlling. *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207 (Utah 1987). If the contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement. *See Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987); *Oberhansly v. Earle*, 572 P.2d 1384, 1386 (Utah 1977). A court may only consider extrinsic evidence if, after careful consideration, the contract language is ambiguous or uncertain. *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983). A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of "uncertain meanings of terms, missing terms, or other facial deficiencies." *Id.; see also Mann v. Wetter*, 100 Or.App. 184, 785 P.2d 1064, 1067 (1990). Whether ambiguity exists in a contract is a question of law. *Faulkner*, 665 P.2d at 1293.

■ In this case, the trial court granted the Winegars' motion for summary judg-

ment. The only parol evidence offered came from the Froerers and wholly supported their position. We must therefore assume that the trial court found the contract unambiguous and must have thus disregarded the Froerers' evidence. We may uphold the trial court's ruling only if we agree that the contract was unambiguous. As this court observed in *Big Butte Ranch, Inc. v. Holm*, 570 P.2d 690, 691 (Utah 1977), we first examine the language of the instrument, according to it the weight and effect it shows the parties intended. If the meaning is ambiguous or uncertain, parol evidence of the parties' intentions should be admitted. A motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists and there is a factual issue as to what the parties intended. *Faulkner*, 665 P.2d at 1293.

■ As mentioned above, two documents made up the assignment agreement between Ranch Liquidators and the Winegars. The first document limited the Froerers' recourse against Ranch Liquidators. That agreement provided:

[Ranch Liquidators] hereby grants unto [the Froerers] recourse against [Ranch Liquidators] in the event and *limited only* to the claims, if any, of the buyers or their assigns or successors, on said contracts for consideration of any kind not made a responsibility of [Ranch Liquidators] by the contracts simultaneously conveyed to [the Froerers] and referred to above.

Under the original agreements between Ranch Liquidators and each of the purchasers of real estate, Ranch Liquidators was responsible for conveying title by warranty deed upon payment of the contract. Thus, the foregoing language (limiting the Froerers' recourse against Ranch Liquidators to actions it was *not* responsible for under the contracts) implies that the Froerers *did* assume liability for any suit by a purchaser for breach of an obligation that Ranch Liquidators *was* originally responsible for, such as conveying good title by warranty deed.

The second agreement between Ranch Liquidators and the Froerers can be construed to indicate a different intent. Because the two documents concerning the assignment were executed "substantially contemporaneously" and are clearly interrelated, we must construe them as a whole and harmonize their meanings if possible. *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d at 229. The second agreement, entitled "Assignment of Contract and Escrow," provided:

> This agreement for sale of real estate [between Ranch Liquidators and the Winegars] *is being held* by Ranch Liquidators of Utah, Inc. [The Froerers] accept this Assignment *subject to the covenants and conditions* contained in said agreement of sale. Further, a warranty deed covering the property described is executed and delivered herewith in favor of [the Froerers].

(Emphasis added.)

The parties differ in their explanations of the effect of the "subject to" language contained in the assignment between Ranch Liquidators and the Froerers. Of course, the fact that the parties differ as to the interpretation of an agreement does not alone establish that ambiguity exists. *Buehner Block Co. v. UWC Assocs.,* 752 P.2d 892, 895 (Utah 1988). The Winegars argue that this language indicates that the Froerers assumed Ranch Liquidators' obligations under the land sale contract. This interpretation would be consistent with the April agreement limiting the Froerers' recourse as against Ranch Liquidators.

According to the Froerers, however, the "subject to" language indicates that the parties intended Ranch Liquidators to remain ultimately responsible to the Winegars for their obligations under the land sale contract.[2] The Froerers cite case law from other jurisdictions regarding the effect of the "subject to" language contained in the assignment agreement. One court, for example, concluded, "The words 'subject to' are not promissory." *Klundt v. Carothers,* 96 Idaho 782, 537 P.2d 62, 65

(1975). Just as the transferee of assets "subject to" an indebtedness or mortgage does not thereby assume liability for the debt, *id.,* "subject to" can be interpreted as words of qualification and notice rather than as words of assumption or contract. *See S.L. Nusbaum & Co. v. Atlantic Va. Realty Corp.,* 206 Va. 673, 146 S.E.2d 205, 209 (1966).

The Idaho Court of Appeals in 1987 addressed a similar case in which the assignee of a note was sued by the obligor, a real estate purchaser, when the obligor discovered it had actually received less property than the assignor had represented. *Murr v. Selag Corp.,* 113 Idaho 773, 747 P.2d 1302 (Ct.App.1987). The court noted that the parties did not express any intent for the assignee to assume liability for the obligor's claims against the assignor. *Id.* 747 P.2d at 1310. Regarding the effect of the words "subject to," the court held:

> [T]he obligor on the note may assert setoffs against it or may have defenses that make the note uncollectible, but *the obligor cannot make affirmative claims for damages against the note assignee* based upon some tort or breach of contract by the original payee.

*Id.* 747 P.2d at 1309 (emphasis added).

Similarly, the assignment from Ranch Liquidators to the Froerers did not unambiguously make the Froerers liable for any claim the Winegars may have had against Ranch Liquidators under the purchase agreement. The agreement indicated that Ranch Liquidators would continue to hold the purchase agreement, and we agree with those jurisdictions that recognize, in certain cases, that accepting an assignment "subject to" an existing debt or obligation may limit, rather than expand, an assignee's liability. If we acknowledge the plausibility of this interpretation, the agreement is deficient in conveying what the parties actually intended to assign. Such a deficiency renders the agreement ambiguous and makes parol evidence of the parties' intent essential.

**2.** The Froerers also cite the language "[the purchase agreement] *is being held* by Ranch Liquidators of Utah, Inc.," as supporting this interpretation.

Finally, we address the effect of Ranch Liquidators' act of giving the Froerers the warranty deed. The Winegars argue that the Froerers purchased the *property* from Ranch Liquidators with notice of the Winegars' equitable interest and so were required to convey the property when the Winegars fully complied with the purchase agreement. The trial court agreed. Without considering evidence of the parties' intent, the trial court concluded that there was an unconditional delivery of the warranty deed to the Froerers. The court determined that this "delivery" transferred fee title to the Froerers, as opposed to constituting conditional delivery as security for the Froerers' right to receive future payments under the purchase agreement. As a result, the trial court held that the Froerers had an obligation to convey a valid warranty deed to the Winegars and were liable because they were unable to perform that obligation. *Id.*

The Froerers concede that if the parties intended the deed to be a present conveyance of fee title, the Froerers may have had an obligation to convey title under an equitable trust theory.[3] They argue, however, that the property was never "conveyed" to them by Ranch Liquidators but, rather, that they held the warranty deed only as security in case of default.[4] They assert that just as when determining the effect of an assignment, the issue of what effect to give the transfer of a warranty deed rests on the intent of the parties in making the transfer. We agree.

A conveyance is valid only upon delivery of a deed with present intent to transfer. *Baker v. Pattee*, 684 P.2d 632, 635 (Utah 1984). It is possible for a party to transfer a warranty deed without intending to convey the property. Debtors, for example, frequently execute absolute deeds of conveyance to creditors with merely an oral understanding that the creditor will hold the deed only as security and reconvey it to the debtor once the obligation is satisfied. S. Nelson & D. Whitman, *Real Estate Finance Law* 44 (2d ed. 1985). These transactions often occur to avoid the strict requirements of the law of mortgages. *Id.* The case law in this country "overwhelmingly establishes" that parol evidence is admissible in equity to show that a deed, although absolute on its face, was intended as a mortgage. *Id.* at 46. This rule applies even though it was knowingly cast in the form of an absolute conveyance, and its execution was not effected by fraud, mistake, ignorance, duress, or undue influence. *Id.*

In Utah, "[a] fee simple is presumed to be intended to pass by a conveyance of real estate, unless it appears from the conveyance that a lesser estate was intended." Utah Code Ann. § 57-1-3. This court has recognized that a deed, absolute in any form, may be construed as a mortgage if it was only intended as security under a parol agreement rather than as an outright conveyance. *Bown v. Loveland*, 678 P.2d 292, 297 (Utah 1984); *see also Kjar v. Brimley*, 27 Utah 2d 411, 497 P.2d 23, 25-26 (1972) (mortgage may consist of warranty deed and separate written contract). The party claiming that a warranty deed was a mortgage must show by clear and convincing evidence that the conveyance was actually intended as a mortgage. *Bown*, 678 P.2d at 297. In *Bown*, we reiterated the elements a court must consider when determining whether an absolute deed was intended as a mortgage, including (1) whether there was a continuing obligation on the part of the grantor to pay a debt or meet an obligation the deed allegedly was made to secure, (2) the question of relative values, (3) contemporaneous and subsequent acts of the parties, (4) the parties' statements, (5) the form of the written evidence of the transactions, (6) the nature of the testimony on which the parties rely, (7) the relationship between the parties, and (8)

---

3. *See, e.g., DeCorso v. Thomas*, 89 Utah 160, 173, 50 P.2d 951, 956-57 (1935) (*purchaser* of real estate with notice of existing equitable interest in property acquires only what vendor can transfer and is liable in equity to same extent as vendor).

4. Of course, both the Froerers and the Winegars could have protected themselves by recording notice of their respective interests.

the apparent aims and purposes of the transfer. *Id.* at 297 (citing *Hansen v. Kohler,* 550 P.2d 186, 188–89 (Utah 1976)).

 We recognize that this case is peculiar because the "grantor" of the deed was the assignor of the contract rather than the party who had a continuing financial obligation to the "grantee." We think these cases are applicable, however, to illustrate that the mere transfer of a warranty deed does not automatically establish that the parties intend a conveyance. The transfer of this warranty deed was merely one component of the assignment transaction. The only written evidence of the transaction consists of the two documents making up the assignment agreement. In light of the ambiguity contained in the agreement, we hold that the intent of the parties was not evident on the face of these documents, making parol evidence necessary to determine what effect to give the transfer of the warranty deed.

## CONCLUSION

The agreement limiting the Froerers' recourse against Ranch Liquidators can be interpreted as assigning to the Froerers Ranch Liquidators' obligation to convey title to the Winegars. The transfer of the warranty deed could indicate that the parties intended to make the Froerers liable for Ranch Liquidators' obligations. Other language in the assignment agreement, however, concerning who "held" the sales agreement and stating that the Froerers were taking the assignment "subject to" the covenants contained in the sales agreement tends to indicate a contrary intent. It is not difficult to see how the trial court was tempted to "weigh" these competing interpretations to determine what effect to give this agreement. Unfortunately, weighing evidence is proper only when making findings of fact, not when determining questions of law in interpreting a contract on a motion for summary judgment. There is sufficient ambiguity regarding the intentions of the parties to this transaction that the trial court could not properly resolve this action in the Winegars' favor as a matter of law. We there-

fore reverse and remand this case for trial on the issue of intent.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.