**CAPITAL ASSETS FINANCIAL SERVICES, a Utah corporation, Plaintiff and Appellee,**

v.

**Dean R. LINDSAY, Garlon J. Maxwell, Val B. Johnson, and Janae Peterson aka Janae Lott, Defendants and Appellant.**

No. 970268–CA.

Court of Appeals of Utah.

April 9, 1998.

Kent B. Linebaugh and Stephen R. Sloan, Salt Lake City, for Appellant.

Bruce A. Maak, Salt Lake City, for Appellee.

Before DAVIS, P.J., WILKINS, Associate P.J., and BILLINGS, J.

## OPINION

WILKINS, Associate Presiding Judge.

Defendant Dean R. Lindsay appeals the trial court's order granting plaintiff Capital Assets Financial Services' (Capital Assets) motion for summary judgment. We reverse.

## BACKGROUND

Lindsay obtained a judgment in district court against R. Craig Christensen in May 1994. On January 12, 1995, Janae Lott, using a standard form quitclaim deed, conveyed her interest in lot nine of the Nuttall Subdivision in Utah County to Christensen. Christensen paid no consideration for the property. According to the uncontested affidavits of Christensen, Lott, and Lott's father, Christensen and Lott intended that Christensen have no "right, title, interest, or claim" to the property. Lott's father arranged the transaction, at Christensen's request, because of his long-standing friendship with Christensen. Lott gave Christensen a quitclaim deed to the property for the limited purpose of enabling him to secure a loan for his own benefit through Capital Assets.

On January 17, 1995, Christensen executed a trust deed in favor of Capital Assets and received the proceeds of the loan secured by the property. On January 18, 1995, both the quitclaim and the trust deeds were recorded. Lott did not receive, nor did she, Christensen, or Capital Assets intend that she receive any of the loan proceeds.

By warranty deed dated and recorded April 25, 1995, Christensen reconveyed the property back to Lott. According to Lott's affidavit, the "exclusive purpose for the execution of the [quitclaim deed, trust deed, and warranty deed] was to give to Capital Assets a first Deed of Trust against the property."

Lindsay claimed that his judgment lien attached to the property when the property was conveyed by quitclaim deed to Christensen. Capital Assets, asserting a superior claim to the property, commenced this action in the district court to establish the trust deed's claimed priority over Lindsay's judgment lien and over that of Christensen's other creditors who had similar liens secured before the recording of the trust deed favoring Capital Assets.

Relying upon Christensen's and Lott's affidavits, as well as the deeds, and other documents of record, Capital Assets moved for summary judgment. Lindsay opposed the motion, moving to strike the affidavits of Christensen and Lott as containing inadmissible parol evidence, as well as unfounded and conclusory statements. The trial court denied the motion to strike and granted Capital Assets's motion for summary judgment. Lindsay appeals.

## STANDARD OF REVIEW

Summary judgment is appropriate only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Utah R.Civ.P. 56(c). We review the trial court's grant of summary judgment for correctness. Furthermore, we view the facts, including all reasonable inferences arising from those facts, in a light most favorable to the nonmoving party. *See K & T, Inc. v. Koroulis,* 888 P.2d 623, 624 (Utah 1994).

## ANALYSIS

Lindsay challenges the trial court's legal conclusion that the judgment lien did not attach to the real property Lott conveyed to Christensen. Lindsay raises two issues on appeal: (1) whether Christensen held an interest in the property Lott quitclaimed to him sufficient for the judgment lien to attach; and (2) whether parol evidence is admissible to determine Christensen's and Lott's intent underlying the quitclaim deed.

We first address the nature of the interest conveyed by Lott to Christensen, without going beyond the deed itself. Next, we address the propriety of admitting the affidavits, and finally we address the affect of that evidence, if properly admitted.

### 1. The Interest Conveyed by Quitclaim Deed

▇ There is no dispute that on January 12, 1995, Lott was the fee title holder of the

property. On that date, she executed and delivered a quitclaim deed to Christensen. The deed states as follows:

### QUITCLAIM DEED

Janae Peterson now known as Janae Lott, grantor, of Utah County, State of Utah, hereby QUIT–CLAIMS to R. Craig Christensen, grantee, 1509 S Sandhill Rd Orem Ut 84058 of Utah County, for the sum of TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION, the following described tract of land in UTAH County, State of Utah: .

All of Lot 9 as designated in the Nuttall Subdivision, Orem, Utah, according to the plat thereof on file in the office of the Utah County Recorder, being part of Section 27, Township 6, South, Range 2 East, Salt Lake Base Meridian.

Witness the hand of said grantor, this 12 day of January, A.D. 1995.

Janae Peterson NKA Janae Lott

[signature]

STATE OF UTAH          )

County of Utah          )

On this 12 day of January, A.D. 199* personally appeared before me, a Notary Public in and for the State of Utah, Janae Peterson NKA Janae Lott the signer of the above instrument, who duly acknowledge to me that she executed the same.

Notary Public

[signature]

My Commission expires [blank]

Residing in Salt Lake City, Utah

This deed substantially follows the form set forth in Utah Code Ann. § 57–1–13 (1994), and as such, "when executed as required by law[,] shall have the effect of a conveyance of all right, title, interest and estate of the grantor in and to the premises therein described and all rights, privileges and appurtenances thereunto belonging, at the date of such conveyance." Utah Code Ann. § 57–1–13.

■ No party has suggested that the deed was not executed as required by law. In fact, all parties assert that the deed was effective when delivered. In addition, "fee simple title is presumed to be intended to pass by a conveyance of real estate, unless it appears from the conveyance that a lesser estate was intended." Utah Code Ann. § 57–1–3 (1994). It is evident from review of Lott's quitclaim deed that a conveyance of a lesser estate was not intended. As a result, the law presumes that Lott conveyed all the interest she held in the property, namely fee simple title, to Christensen upon execution and delivery of the quitclaim deed on January 12, 1995. Therefore, absent admissible extrinsic evidence to the contrary, Lott conveyed full fee simple title to Christensen on that date.

### 2.   Propriety of Admitting the Affidavits

Lindsay argues on appeal that the trial court should not have admitted and considered Lott's and Christensen's affidavits. He asserts that because the quitclaim deed's terms are plain and unambiguous, and because the affidavits are deficient, such extrinsic evidence is inadmissible. Capital Assets, on the other hand, argues that extrinsic evidence of Lott's and Christensen's intent in executing and delivering the quitclaim deed, as stated in their affidavits, is admissible in this case. We first examine the admissibility of extrinsic evidence regarding Lott's and Christensen's intent.

### a.   Admissibility of Extrinsic Evidence Generally

■ Deeds are construed according to ordinary rules of contract construction. *See Homer v. Smith,* 866 P.2d 622, 629 (Utah Ct.App.1993), *see also Gillmor v. Cummings,* 904 P.2d 703, 706 (Utah Ct.App.1995). If the deed terms are clear and unambiguous, we interpret them according to their plain and ordinary meaning, and parol evidence is generally not admissible to vary the terms. *See Hartman v. Potter,* 596 P.2d 653, 656 (Utah 1979); *Gillmor,* 904 P.2d at 706. "If the [deed] is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement." *Winegar v. Froerer Corp.,* 813 P.2d 104, 110 (Utah 1991). "A court may only consider extrinsic evidence if, after careful

consideration, the contract language is ambiguous or uncertain." *Id.*

Here, neither party claims the quitclaim deed's language is ambiguous, and "[t]he language of the quitclaim deed supports a conclusion that the quitclaim deed is unambiguous as a matter of law." *Crowther v. Mower,* 876 P.2d 876, 880 (Utah Ct.App.1994). However, the issue is not the clarity of the deed itself. The question raised by Capital Assets before the trial court is one of the intent of the parties to the agreement. According to Capital Assets, the agreement at issue is an oral agreement for which the quitclaim deed stands as a partial but not complete expression.

■ The Utah Supreme Court has held that in some cases "[p]arol evidence is admissible to show the purpose and intent of parties to a deed." *Bown v. Loveland,* 678 P.2d 292, 297 (Utah 1984). The reason for allowing parol evidence of the grantor's intent in making and delivering an otherwise unlimited deed arises from the requirement that the grantor have a present intent to convey title when delivering the deed. *See Winegar,* 813 P.2d at 110. Because it is possible for a grantor to deliver a deed while *not* intending to immediately convey title, proof of that intent may be necessary for the court to ascertain and enforce the parties' agreement. As such, we conclude that extrinsic evidence of Lott's and Christensen's intent regarding their agreement concerning the quitclaim deed is admissible.

### b. Admissibility of Lott's and Christensen's Affidavits

■ Rule 56(e) of the Utah Rules of Civil Procedure requires affidavits submitted in support of or in opposition to a motion for summary judgment to be made on personal knowledge, to set forth facts that would be admissible in evidence, and to show affirmatively that the person making the affidavit is competent to testify as to those facts. *See* Utah R.Civ.P. 56(e). The affidavit of Christensen and the combined affidavit of Lott and her father appear to be made on personal knowledge, and both recite facts sufficient to establish the affiants' competence to attest to the facts set forth in the affidavits. In addition, both affidavits set forth facts that would clearly be admissible as evidence. However, both affidavits also contain legal conclusions which the trial court must disregard. To the extent that the affidavits, both of which contain remarkably similar language, proclaim the parties' *intent* that Christensen acquire no "interest in, equity in, ownership of, or other claim to ownership" to the property, the affidavits are admissible. To the extent that the affiants proclaim that Christensen had no such interest, equity, ownership, or claim in the property, those portions are not admissible because they represent a legal conclusion that the parties are not qualified to make. With this limitation, the trial court properly considered the affidavits.

### 3. Interest Conveyed to Christensen

■ Having concluded that the interest otherwise conveyed by Lott to Christensen was full fee simple title to the real property and that the extrinsic evidence of Lott's intention in making that transfer is admissible in this case, we next turn to the legal impact of that evidence.

Lott intended to convey to Christensen enough interest in the property to allow him to use his interest to secure a loan from Capital Assets.[1] Neither Lott nor Christensen intended that Christensen act as trustee or agent in securing a loan for Lott, nor did Lott and Christensen intend that Christensen buy the real property from Lott by using the loan proceeds or otherwise. The clearly expressed intent of Lott as grantor, and Christensen as grantee, was that the property would become Christensen's *to the degree necessary to convey a trust deed interest to Capital Assets.* For our purpose, the critical question is whether such an interest in the property is also sufficient for a judgment lien to attach, and if so, whether there is any

---

1. While it is certainly possible that Lott could have simply offered the real property directly to Capital Assets as security for the loan to Chris- tensen without conveying any interest whatsoever to Christensen, that did not occur here.

reason such a judgment lien should not attach.

### a. Interest Required for Attachment of Trust Deed

A trust deed is a conveyance by which title to the trust property passes to the trustee. "Upon default, the trustee has power to sell the property to satisfy the trustor's debt to the beneficiary." *First Sec. Bank v. Banberry Crossing,* 780 P.2d 1253, 1256 (Utah 1989). We need not go further. The interest the grantor of the trust deed must possess is one sufficient to give the trustee enough interest in the property to sell it in the event of nonpayment.

### b. Interest Required for Attachment of Judgment Lien

"[T]he entry of judgment by a district court is a lien upon the real property of the judgment debtor, not exempt from execution, owned or acquired during the existence of the judgment, located in the county in which the judgment is entered." Utah Code Ann. § 78–22–1(2) (Supp.1996). A judgment lien creditor may levy execution on the real property or, if required to defend against a suit designed to cancel his judgment lien, the creditor may foreclose the lien. *See Free v. Farnworth,* 112 Utah 410, 414, 188 P.2d 731, 733 (Utah 1948). In this case, appellant, as a judgment lien creditor, was hailed into court to defend the efficacy of his judgment lien.

A judgment lien attaches only to the actual interest the judgment debtor has in real property when the judgment is obtained and recorded, *see Belnap v. Blain,* 575 P.2d 696, 699 (Utah 1978), or when the debtor acquires property during the existence of the judgment. A judgment lien clearly attaches to a debtor's equitable and beneficial interests. *See, e.g., Butler v. Wilkinson,* 740 P.2d 1244, 1254, 1256 (Utah 1987) (holding judgment lien attached to buyer's, not seller's, interest under executory land contract). However, a debtor retaining bare legal title has no property "interest" to which a judgment lien could attach. *See Belnap,* 575 P.2d at 699. Further, a judgment creditor can acquire no greater interest in property than that held by the debtor. Thus, "a judgment creditor of a debtor holding bare legal title to property cannot attach the equitable interest in the property, as it is vested in another." *Wolf Organization, Inc. v. Oles,* 119 Md.App. 357, 705 A.2d 40, 46 (1998) (noting bare legal title in property held as security interest for debt is a technicality). The property interest necessary for a judgment lien to attach to real property is that sufficient for the judgment creditor to take by levy or to sell in foreclosure.

### c. Exceptions to Attachment of Judgment Lien

Section 78–22–1 excludes real property "exempt from execution" from attachment of a judgment lien. Utah Code Ann. § 78–22–1 (Supp.1996). Although the statute does not specify what real property is exempt from execution, Utah courts have determined that in some circumstances the judgment debtor's real property interest is insufficient for a judgment lien to attach. For instance, a judgment lien cannot attach to property to which the debtor holds only bare legal title, such as in the case of a vendor's interest under an executory land contract, *see Cannefax v. Clement,* 818 P.2d 546, 549–50 (Utah 1991) (holding vendor's interest is merely legal while vendee's interest is equitable), or property held by a trustee or conduit in title, *see Belnap,* 575 P.2d at 699 (noting trustee or conduit holds title for benefit of another). In addition, a judgment lien cannot attach to a debtor's real property if the property has already been sold, conveyed, or quitclaimed—even if the judgment lien is recorded first—because there is no "interest" to which the lien can attach. *See, e.g., Barlow Soc'y v. Commercial Sec. Bank,* 723 P.2d 398, 400 (Utah 1986); *Kartchner v. State Tax Comm'n,* 4 Utah 2d 382, 384, 294 P.2d 790, 791 (1956). The circumstances here do not fall into any of these narrow exceptions. As such, the property Lott conveyed to Christensen is not "exempt" from the attachment of Lindsay's pre-existing judgment lien under section 78–22–1(2).

In addition, under section 78–22–1(2), a judgment automatically becomes a lien upon all the judgment debtor's nonexempt

real property when the judgment is docketed, or, as in this case, when the debtor acquires the property. Furthermore, a judgment creditor's right to a lien, pursuant to an enforceable judgment, is unconditional and is not subject to alteration by a court on equitable grounds. *See Taylor Nat'l, Inc. v. Jensen Bros. Constr. Co.,* 641 P.2d 150, 154–55 (Utah 1982).

In giving Christensen a quitclaim deed to her property, Lott intended to transfer enough ownership to Christensen to allow him to obtain financing by offering the property as security for a loan. Lott intended that Christensen have the authority to transfer to Capital Assets the power to sell the land for an unpaid debt. This degree of ownership is sufficient for a judgment debtor to acquire the power to possess by levy, or sell by foreclosure, the real property to satisfy the unpaid judgment. It was not within the trial court's power to alter the judgment lien's quality on equitable grounds. As a matter of law, where an undisputed owner of fee simple title to real property conveys that real property to another by a standard form of quitclaim deed that contains no express reservation or exception to the title transferred, the grantee takes fee simple title. *See Jacobson v. Jacobson,* 557 P.2d 156, 158 (Utah 1976). Furthermore, as a matter of law, the grantor's express intention to limit the interest conveyed to the grantee to the minimum necessary for the grantee to convey the property to another by trust deed to secure an unrelated loan, neither for purchase money nor for the grantor's financial benefit, results in the transfer by the original grantor of a sufficient interest in the real property for pre-existing judgment liens against the grantee to attach. Under the circumstances so described, the judgment liens are prior and superior to the interest conveyed by the trust deed.

The trial court's judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

DAVIS, P.J., and BILLINGS, J., concur.