1999 UT 38

**Alva A. YOUNG, Jr., as personal representative of the estate of Emily P. Young, as personal representative of the estate of Alva A. Young, Sr., and as successor trustee of the Alva A. Young Trust dated November 30, 1987, Plaintiff and Appellee,**

v.

**Sidney Leo YOUNG; Joe Sharkey Young; Alva A. Young, Jr., in his individual capacity; Max Halley Young; Emily Y. McCollaum, et al., Defendants and Appellants.**

No. 970219.

Supreme Court of Utah.

April 20, 1999.

Matthew C. Barneck, Salt Lake City, for plaintiff.

Darwin C. Fisher, Provo, for defendants.

RUSSON, Justice:

¶ 1 Defendants appeal a judgment entered in favor of plaintiff. We affirm in part and reverse in part.

## INTRODUCTION

¶ 2 In November of 1987, Alva A. Young, Sr., created the Alva A. Young Trust (the "1987 trust") for the benefit of his wife Emily P. Young, his five children Alva Jr., Sid, Joe, Hal, and Sis, and his grandchildren. The trust assets included real property, water and irrigation stock, various items of farm machinery, and several bank accounts. Alva Sr. named himself, Emily, and Alva Jr. as trustees.

¶ 3 In 1987, some of the 1987 trust property was leased to Sid and his wife Cecilia to conduct farming operations. Under the

terms of this 1987 farm lease, Sid and Cecilia were obligated to pay fifty percent of the profits from the leased property to the 1987 trust.

¶ 4 The language of the 1987 trust provided that upon Alva Sr.'s death, if he should predecease Emily, the trust assets be distributed into two separate trusts, a marital trust and a residuary trust.[1] While Emily was to receive income from each of these two subtrusts, she was permitted to invade the principal of the marital trust only. Upon Emily's death, any remaining assets of the marital trust were to pass to the residuary trust, which then was to be divided into five separate trusts, one for each child. The income from each trust was to be distributed to each respective child and, on the death of each child, shares of the principal were to be distributed among that child's issue and the surviving children of Alva Sr.

¶ 5 Alva Sr. died on July 30, 1989, at which time the corpus of the 1987 trust was valued at $728,505. Emily believed the corpus was to be divided equally between the marital trust and the residuary trust. She therefore executed a warranty deed on June 2, 1990, and a grant deed on June 28, 1990. These two deeds purported to convey the 1987 trust property in equal amounts to two trusts she identified as the "Alva A. Young Family Trust" and the "Emily P. Young Trust." Emily also conveyed water shares she owned to a trust she identified as the Emily P. Young Family Trust.

¶ 6 Emily died on August 18, 1993. In the years preceding her death, Emily distributed various amounts of money to her children. After Emily's death, Alva Jr. found a yellow envelope in a steel box among her possessions. At the top of the envelope in Emily's handwriting were the words "Cash Loans." The envelope contained various checks made out to Emily's children and an itemization of the sums of money distributed. The envelope also indicated that Emily had delivered $100,000 to Sid, which money Emily had obtained through two separate bank loans—one for $75,000 and one for $25,000.

To secure those two loans, Emily had pledged assets of the 1987 trust.

¶ 7 After Emily's death, disputes arose among the children regarding interpretation of the 1987 trust, namely, how the assets of that trust were to be allocated to the marital and residuary trusts, how the trust funds were to be distributed to the children, and the amount of money Sid and Cecilia owed under the 1987 farm lease. In 1994, Alva Jr., in his capacity as personal representative for the estates of Alva Sr. and Emily, and in his capacity as successor trustee for the 1987 trust, brought suit to resolve these disputes. A bench trial was held in January of 1996.

¶ 8 At trial, the parties disputed how the 1987 trust assets should be divided between the marital and residuary trusts. Defendants argued that the trust was ambiguous and that the court should consider parol evidence in interpreting it. According to defendants, such evidence showed that Alva Sr. intended the trust assets to be divided equally between the marital and residuary trusts. Plaintiff, on the other hand, argued that the trust was not ambiguous and, therefore, the court should look only to the trust language in determining how to allocate the trust assets. The plain language of the 1987 trust, according to plaintiff, required the assets to be allocated in a manner that minimized federal estate taxes. The trial court agreed with plaintiff and held that the assets were to be allocated between the marital and residuary trusts in such a way as to achieve that objective. Accordingly, the court allocated $600,000 to the residuary trust and the remaining $128,505 to the marital trust.[2]

¶ 9 The parties also disputed at trial the validity of the warranty deed and the grant deed Emily executed in June of 1990. As mentioned, these deeds purported to convey the 1987 trust assets in equal proportions to two other trusts, the Alva A. Young Family Trust and the Emily P. Young Trust. Relying on their view that the trust assets were to be divided equally, defendants contended the conveyances were valid. In contrast,

---

1. In the 1987 trust, the marital trust is also referred to as "Trust One" and the residuary trust as "Trust Two."

2. The parties stipulated that the value of the 1987 trust was $728,505.

plaintiff argued that an equal allocation was not permitted because it would result in higher estate taxes and that, as a result, the deeds were invalid. The trial court agreed with plaintiff, holding that the warranty and grant deeds were improper and invalid.

¶ 10 The parties contested the validity of Emily's conveyances of her own water shares. Emily conveyed her Deseret Irrigation water shares to "Emily P. Young Family Trust, Emily P. Young and Eugene W. Young" and her Abraham Irrigation Company water shares to "Emily P. Young Family Trust, Emily P. Young and Eugene W. Young, Trustees." The trial court held that the Emily P. Young Family Trust was a nonexistent entity and that, consequently, the conveyances were void from the outset. Accordingly, the court held that Emily had retained ownership of the shares and that they were now part of her estate.

¶ 11 The parties also contested whether the monies Emily distributed to Sid and Joe were advancements against their respective inheritances. Although there was testimony that some parties who had received sums of money from Emily considered the sums to be gifts, while others considered the sums to be advancements against their inheritances, the trial court found that Emily intended to treat her children equally and, on that basis, ruled that all monies given to her children were advancements. The trial court then calculated the following advancements: $31,036 to Sis; $50,000 to Hal; $71,389.50 to Sid; and $33,626 to Joe.[3]

¶ 12 The parties disputed whether the $100,000 received by Sid was a loan or a gift. After hearing evidence from both sides, the trial court found that the $100,000 was a loan that Sid had to repay.

¶ 13 The parties also disputed how much money Sid and Cecilia owed under the 1987 farm lease. At trial, the court had to determine the amount of profit Sid made on the operation of the farm from 1988 to 1993 because, under the terms of the lease, fifty percent of those profits had to be paid to the 1987 trust. The parties agreed that "profit"

meant gross income minus expenses related to the property and that Sid's tax returns would be the source of those figures. Sid's tax returns, however, did not distinguish between income and expenses of the 1987 farm lease land as opposed to those of other land Sid farmed. After determining the total gross income and expenses for all farming operations, the court multiplied those figures by the percentage of total production attributable to the 1987 farm lease land.[4] Having made these calculations for each year, the court then multiplied the total profits by fifty percent, which constituted the amount due under the 1987 farm lease. The court determined not to include the following as expenses attributable to the 1987 farm lease land: certain payments to Sid's children that were unrelated to operation of the 1987 farm lease land; mortgage payments on property separate from the 1987 farm lease property; depreciation for equipment distinct from 1987 farm lease equipment; employee benefits; and taxes and water assessments on the 1987 farm lease land that Sid did not pay. In the end, the court found that Sid and Cecilia owed $60,642 on the 1987 farm lease. To that amount, the court added interest, calculated at ten percent, totaling $23,175.

¶ 14 On appeal, defendants attack the trial court's findings of fact and conclusions of law. Specifically, defendants contend that the trial court erred (i) in allocating the 1987 trust assets between the marital and residuary trusts; (ii) in concluding that the 1987 trust owned the land, equipment, and water shares listed on the warranty deed and the grant deed; (iii) in invalidating Emily's conveyances of her own water shares; (iv) in concluding that Sid and Joe had received advancements against their inheritances; (v) in finding that the $100,000 Sid received from Emily was a loan; (vi) in finding that Sid owed $60,642, plus interest, on the 1987 farm lease; (vii) in finding that all the water rights listed in the 1987 farm lease were transferred to the 1987 trust; and (viii) in finding that the sale of the farm to third parties included the property and water shares owned by Hal and Alva Jr.

3. The court found that Alva Jr. had not received an advancement.

4. These percentages were determined from the production records prepared by Sid.

## STANDARD OF REVIEW

¶ 15 We do not reverse a trial court's findings of fact unless they are clearly erroneous. *See* Utah R. Civ. P. 52(a); *Orton v. Carter,* 970 P.2d 1254, 1256 (Utah 1998). When challenging a trial court's findings, "[a]n appellant must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989) (citation omitted). We review a trial court's conclusions of law for correctness. *See Smith v. Batchelor,* 934 P.2d 643, 646 (Utah 1997).

## ANALYSIS

### *Interpretation of the 1987 Trust*

¶ 16 The first issue we address is whether the trial court erred in interpreting the 1987 trust. The trial court held that the 1987 trust was unambiguous. Considering only the language of the trust, the trial court concluded that the assets were to be allocated between the marital and residuary trusts in such a way as to keep estate taxes to a minimum. With this aim, the trial court allocated $600,000 to the residuary trust and $128,505 to the marital trust. Defendants' contentions are that (i) the 1987 trust is ambiguous; (ii) the court, therefore, should have considered extrinsic evidence in determining how to allocate the 1987 trust's assets between the marital and residuary trusts; and (iii) the extrinsic evidence shows that the assets were to be divided equally between the marital and residuary trusts. Defendants do not challenge that the amounts the court allocated to the respective trusts reduced the estate taxes to the lowest possible amount.

¶ 17 Defendants' claim of ambiguity is rooted in the language of two separate provisions of the 1987 trust.[5] The first provision, article IV, paragraph 4.2, states:

5. Defendants argue the trust is ambiguous in other respects as well. However, these claims of ambiguity are not relevant to the question of

The Marital Trust shall consist of the survivor of the decedent's interest in all community property in the trust estate, the survivor of the decedent's separate property in the trust estate, and only such fractional interest in all other property of the first of the spouses to die that qualifies for a marital deduction under the Federal Estate Tax laws as is necessary to reduce the Federal Estate Taxes of the first spouse to die to the lowest possible amount.

The second provision, article IV(b), paragraph 3.2, states, "The trustees shall, in addition to the Settlor's residence, allocate and place in Trust One [i.e., the marital trust] only such assets as will qualify for the marital deduction, and no other assets." Defendants claim that under these provisions, different assets will be allocated depending on which provision is followed and that, therefore, the trust is ambiguous. We note, however, that defendants fail to explain how the two provisions are inconsistent or otherwise ambiguous, and they articulate no basis for allocating different assets depending on the provision followed.

¶ 18 We agree with the trial court's ruling that the trust is unambiguous as to the allocation of assets between the marital trust and the residuary trust. Reading the two provisions together, it is clear that the following assets are to be allocated to the marital trust:

1. Emily's interest in all community property in the trust estate, which qualifies for the marital deduction;

2. Emily's separate property in the trust estate, which qualifies for the marital deduction; and

3. The fractional interest of Alva's property that qualifies for a marital deduction and reduces the estate taxes to the lowest possible amount.

¶ 19 Given the above, we hold that the trial court did not err in allocating the 1987 trust assets in the manner it did. In signing the 1987 trust document, Emily released and waived any right, title, or interest she had in the trust property, and there is no evidence

allocation between the marital and residuary trusts.

that any of Emily's separate property later became part of the 1987 trust. Therefore, there was no interest in any community property or any separate property to allocate to the marital trust pursuant to numbers 1 and 2 above. All that remained to be allocated to the marital trust was that fractional interest of Alva's property which would reduce the estate taxes to the lowest possible amount. Accordingly, the trial court allocated $600,000 of the 1987 trust assets to the residuary trust and the remaining $128,505 to the marital trust. Defendants concede that this allocation reduces the estate taxes to the lowest possible amount. The trial court did not err in concluding that the 1987 trust was unambiguous, nor did it err in allocating the trust assets so as to minimize estate taxes.

### The Warranty and Grant Deeds

■ ¶ 20 The next issue we address is whether the trial court erred in concluding that the warranty deed and the grant deed were invalid. These deeds attempted to convey equal amounts of the 1987 trust assets to two other trusts. However, there is no basis in the language of the 1987 trust for such an allocation. In fact, the 1987 trust expressly prohibits Emily from invading the principal of the residuary trust. By attempting to convey away all of the 1987 trust assets via the warranty and grant deeds, Emily attempted to circumvent that express prohibition.

¶ 21 Moreover, as set forth above, the assets were to be allocated to reduce the estate taxes to the lowest amount possible. Emily's attempt to convey two equal amounts of the trust assets is patently incompatible with this objective, as such an allocation would result in increased estate taxes. Conversely, the court's allocation of $600,000 to the residuary trust and $128,505 to the marital trust minimizes estate taxes. For these reasons, the trial court did not err in invalidating Emily's attempted conveyances.

### Conveyance of Water Shares

■ ¶ 22 We next address the issue whether Emily's conveyance of her own water shares was invalid. Emily conveyed the Deseret Irrigation water shares to "Emily P. Young Family Trust, Emily P. Young and Eugene W. Young" and the Abraham Irrigation Company water shares to "Emily P. Young Family Trust, Emily P. Young and Eugene W. Young, Trustees." At trial, no evidence was offered to establish the existence of the Emily P. Young Family Trust, and the record suggests no such trust was ever created. Therefore, Emily attempted to convey the water shares to a nonexistent entity. Such attempted conveyances are void. *See Sharp v. Riekhof,* 747 P.2d 1044, 1046 (Utah 1987) (noting that attempted conveyances of property interests to nonexisting entities are void). The trial court, therefore, did not err in invalidating the attempted conveyances and holding that Emily owned the water shares at her death and that those shares, as a result, became part of her estate.

### Advancements

¶ 23 The issue we next address is whether the trial court erred in finding that Sid and Joe had received advancements on their inheritances. Defendants claim the court erred because there was no writing from either Emily, Sid, or Joe indicating that the monies received were advancements. Plaintiff counters that a writing was not required but that, even if one was, the yellow envelope with Emily's handwritten notation of "Cash Loans" at the top satisfies such a requirement. For the following reasons, we agree with defendants that the trial court erred in finding that the monies received were advancements against their inheritances.

¶ 24 The determination of whether property received during the life of a decedent is an advancement against the recipient's share of the decedent's estate is governed by Utah Code Ann. § 75–2–110 (1993).[6] That section provides in pertinent part:

> If a person dies intestate as to all his estate, property which he gave in his life-

---

6. Utah Code Ann. § 75–2–110 (1993) was recodified and amended in 1998. *See* Utah Code Ann.

§ 75–2–109 (Supp.1998).

time to an heir is treated as an advancement against the latter's share of the estate *only if declared in a writing* by the decedent or acknowledged in writing by the heir *to be an advancement.*

*Id.* (emphasis added). Thus, to qualify as an advancement, the property given must have been owned by the decedent and there must be a writing declaring that the property given was an advancement.

¶ 25 Here, it is unclear whether the monies Emily distributed were entirely from her own estate or whether a part or all of those monies were from the principal of the residuary trust, which Emily was forbidden to access. To the extent the monies were from Emily's own estate, there must be a writing declaring those monies to be advancements. The trial court's finding, however, is silent as to the existence of such a writing. The finding simply states:

> Although there is testimony before the Court that some parties who received money from Emily considered the money as a gift and some parties considered the money as an advancement against their inheritance, the Court finds that it was Emily's intent to treat her children equally and that any money given to her children should be considered as an advancement.

Because the trial court's finding is devoid of any analysis concerning the statutory criteria for advancements, the finding cannot be upheld. It was error to conclude that the sums of money given by Emily were advancements without applying the statutory standard for making such a determination.

¶ 26 Plaintiff argues a writing was not required because Emily died testate and section 75–2–110 applies only when a person dies intestate. *See* Utah Code Ann. § 75–2–110 (1993); *id.* editorial board comment ("The present section applies only when the decedent died intestate and not when he leaves a will."). We disagree. Under the Utah Code, the determination of whether an intervivos gift is to be taken into account in the distribution of an estate requires written evidence. While section 75–2–110 applies

when a person dies intestate, section 75–2–612 (1993) [7] applies when a person dies testate. That section, titled "Ademption by satisfaction," states in pertinent part:

> Property which a testator gave in his lifetime to a person is treated as a satisfaction of a devise to that person in whole or in part, only if the will provides for deduction of the lifetime gift, or the testator declares in a writing that the gift is to be deducted from the devise or is in satisfaction of the devise, or the devisee acknowledges in writing that the gift is in satisfaction.

*Id.* The editorial board comment states, "This section parallels § 75–2–110 on advancements and follows the same policy of requiring written evidence that lifetime gifts are to be taken into account in distribution of an estate, whether testate or intestate." *Id.* editorial board comment. Thus, regardless of whether Emily died testate or intestate—a determination not made by the trial court—there must be a writing evidencing that the monies Sid and Joe received were advancements. Accordingly, the trial court's finding *is reversed and remanded for further proceedings.*

### Loans to Sid

¶ 27 The next issue we address is whether the trial court erred in finding that the $75,000 and $25,000 amounts Sid received were loans. Because defendants are challenging the trial court's findings of fact, they must marshal the supporting evidence and demonstrate that despite such evidence, the trial court's findings are against the clear weight of the evidence. *See In re Estate of Bartell*, 776 P.2d at 886. While defendants have properly marshaled the evidence on this issue, they have not demonstrated that the trial court's finding is against the clear weight of the evidence.

¶ 28 At trial, plaintiff put forth evidence that Sid himself admitted he had borrowed the $100,000 from Emily and intended to pay back the money, although he later stated he would not. While Sid controverted this evi-

---

7. Utah Code Ann. § 75–2–612 (1993) was recodified and amended in 1998. *See* Utah Code Ann. § 75–2–609 (Supp.1998).

dence and put forth other evidence that the money was not to be repaid, we conclude that the evidence presented adequately supported the trial court's finding that the $100,000 was a loan Sid was to repay. The trial court's finding on this issue was not in error.

### The 1987 Farm Lease

¶ 29 We next consider whether the trial court erred in finding that Sid and Cecilia owed $60,642, plus interest, on the 1987 farm lease.

¶ 30 It is undisputed that Sid farmed other property not included in the 1987 farm lease and that Sid's tax returns did not distinguish between the revenue and expenses attributable to the respective properties. Given this, the trial court found that "[t]he proportion of grain and alfalfa produced on Leased Trust Land, as compared with other land Sid farmed during the years 1987 through 1993, is the most appropriate method of determining the percentage of revenue and expenses related to the Leased Trust Land covered by the 1987 farm lease." Defendants attack this finding but fail to marshal the evidence supporting it. As a result, they fail to meet their burden on appeal, and we assume that the evidence adequately supported the finding. *See Interwest Constr. v. Palmer*, 923 P.2d 1350, 1358 (Utah 1996).

¶ 31 The trial court also found that certain claimed expenses were not related to the 1987 leased property and, thus, did not include those expenses in its calculation of profits under the 1987 lease. Defendants attack these findings by claiming, first, that the trial court erred in finding that monies received by Sid's children were not expenses related to the 1987 lease property. Evidence was put forth at trial, however, that Sid classified the monies received by his children as gifts, not wages. While Sid testified that these were actually labor payments to his children for farming the 1987 lease property, we conclude that the evidence presented at trial sufficiently supported the trial court's finding.

¶ 32 Defendants contest the trial court's finding that "[m]ortgage, principal and interest payments on other land Sid farmed or on other equipment Sid owned during the same time period as the 1987 Lease were not expenses to be considered in determining 'profits' under the 1987 Lease." Again, the evidence adduced at trial supported this finding. For instance, it was undisputed that none of the 1987 lease property was encumbered by a mortgage. Sid testified that some of the money borrowed was to finance farming operations and that some was borrowed to finance land acquisitions. Sid, however, could make only a "rough guess" as to what amount went to farming operations as opposed to land acquisitions. Furthermore, there was evidence of sufficient lease equipment and water to conduct farming operations on the 1987 lease land; thus, there would have been little, if any, need to finance the farming operations of the 1987 trust land. This evidence sufficiently sustains the trial court's finding.

¶ 33 Defendants attack the court's finding that "[d]epreciation expenses of other equipment owned by Sid were not expenses to be considered in determining profits under the Lease." The evidence presented at trial, however, also supported the court's finding. Trial testimony indicated there was sufficient equipment under the 1987 lease to operate the 1987 lease land and that, as a result, there was no reason to purchase new equipment to operate that land.

¶ 34 Defendants claim the trial court erred in determining that employee benefits were not valid expenses. While the court did not make a specific finding excluding employee benefits as an expense, such a finding is implicit in the court's acceptance of the expense calculations of plaintiff's expert witness, which excluded employee benefits. In challenging this implicit finding, however, defendants fail to adequately marshal the supporting evidence and thus fail to meet their burden on appeal. As a result, we assume that the evidence introduced at trial adequately supported the finding. *See Palmer*, 923 P.2d at 1358.

¶ 35 Defendants dispute the trial court's finding that the property taxes and water assessments for the 1987 lease land were not valid expenses. It is undisputed that Emily, not Sid, paid these taxes and assessments. The trial court ruled, however, that

because the 1987 lease required payment of fifty percent of the profits, fifty percent of the tax and assessment payments should be considered advancements against Sid's inheritance. As outlined above, the trial court's finding concerning advancements is reversed and remanded for further proceedings. If, on remand, the court finds that Sid is not responsible for fifty percent of the taxes and assessments, then Sid cannot use the tax and assessment payments in calculating the profits due under the lease because he never incurred those expenses. If, however, the court finds Sid responsible for fifty percent of the taxes and assessments, then those amounts qualify as expenses for the purpose of calculating profits under the 1987 lease. It would be inconsistent, indeed unfair, to hold Sid responsible for fifty percent of the taxes and assessments but not allow him to subtract those amounts as expenses in determining the amount he owes under the lease. Therefore, this finding is also reversed and remanded for further proceedings.

¶ 36 Finally, defendants claim the trial court erred in applying interest to the profits determined to be due under the 1987 farm lease. Section 15–1–1 of the Utah Code states in part: "Unless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum." Utah Code Ann. § 15–1–1(2) (1996). Because the 1987 farm lease contains no provision concerning interest, section 15–1–1(2) applies, and the trial court properly calculated interest at ten percent on the amounts due under the lease.

*Remaining Issues*

¶ 37 Defendants present two additional issues. First, they argue that the trial court erred in finding that all the water rights listed in the lease were transferred to the 1987 trust. Plaintiff correctly counters that this is not an issue. Although the findings of fact incorrectly state that all the water rights referred to in the 1987 farm lease were conveyed to the 1987 trust, the court corrected this error in its written judgment when it stated that Emily owned the 100 shares of Deseret Irrigation stock and the 140 shares of Abraham Irrigation stock.

¶ 38 Second, defendants argue the trial court erred in finding that the sale of the farm to third parties included the forty-acre parcels and the water stock owned by Hal and Alva Jr. Defendants, however, fail to adequately marshal the evidence in support of this finding and thus fail to meet their burden on appeal. Although we do not address the issue, we note that plaintiff has no objection to modifying the finding to indicate that the sale "may" include property owned by Hal and Alva Jr.

**CONCLUSION**

¶ 39 We affirm the trial court's decision with the exception that its findings concerning advancements and the calculation of profits under the terms of the 1987 lease are reversed. This case is remanded for further proceedings on that basis.

¶ 40 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.

