2001 UT App 141

GLAUSER STORAGE, L.L.C., a Utah limited liability company; Steven D. Glauser, an individual; Kristine G. Lofts, an individual; Richard M. Glauser, an individual; Susan G. Larsen, an individual; and Craig K. Glauser, an individual, Plaintiffs and Appellees,

v.

Dale T. SMEDLEY, an individual; and Does I–X, Defendants and Appellant.

No. 990544–CA.

Court of Appeals of Utah.

May 3, 2001.

tance of counsel. *Stewart v. Sullivan,* 29 Utah 2d 156, 158, 506 P.2d 74, 76 (1973).

T. Richard Davis, Callister, Nebeker & McCullough, Salt Lake City, for Appellant.

Craig L. Taylor and Roger W. Griffin, Kaysville, for Appellees.

Before Judges GREENWOOD, BENCH, and ORME.

## OPINION

ORME, Judge:

¶ 1 Defendant Dale T. Smedley appeals the trial court's judgment in favor of plaintiffs on breach of contract and quiet title claims. With limited exceptions, we affirm.

## BACKGROUND

¶ 2 On January 29, 1979, after a few months of negotiations, Melvin Glauser, father of the individual plaintiffs, and defendant Smedley entered into a transaction to exchange certain properties. The parties finalized the 1979 deal by executing a written agreement providing that both parties "will convey all rights, title and interest" in their respective properties. The parties then exchanged warranty deeds to the respective properties, all of which were located in Davis County. Glauser and his wife deeded Smedley and his wife 32 acres of building lots known as Melanie Acres. In return, Smedley and his wife deeded Glauser Construction Co., Inc. real property containing 86 storage sheds. This property exchange was only one of many transactions between Glauser and Smedley over a period of many years.

¶ 3 The 1979 agreement imposed several obligations on Smedley. It required Smedley to manage the storage sheds for the

Glausers' benefit for the remainder of their lives and made him responsible for all management related expenses, including payment of all repairs, taxes, and insurance premiums.

¶ 4 Smedley also agreed to pay the Glausers the following: (1) $2,000 per month from the rents collected on the storage sheds for the remainder of the Glausers' lives and (2) $6,000 per year, for at least thirteen years, as a vacation fund. To secure payment of these monetary obligations, Smedley agreed to set up an escrow account in the amount of $300,000.

¶ 5 Over the next few months, Smedley failed to fund the escrow account, so on December 4, 1979, the parties amended the 1979 agreement, and Smedley gave the Glausers a mortgage on 274 acres of land in Salmon, Idaho, as substitute security.[1] As part of this amended agreement, Smedley agreed to continue to pay the taxes on the Salmon property. The Glausers later discovered that the Salmon property was encumbered by an agricultural lease held by Bill Isley, which ran through the year 2007. In June 1993, in exchange for Isley releasing his rights in the agricultural lease, the Glausers conveyed 24 acres of the Salmon property to Isley.

¶ 6 Over the years, Smedley breached many of his obligations under the 1979 agreement: (1) He failed to pay property taxes owed on the storage sheds in the amount of $20,703.18; (2) he failed to pay for necessary maintenance and repair costs on the storage sheds, in amounts totaling $18,037; (3) he neglected to pay property taxes on the Salmon property in the amount of $8,960.86; and (4) beginning in 1984 and continuing for four years, he failed to pay the $6,000 owed annually to the Glauser vacation fund.

¶ 7 In the summer of 1994, both Glauser and his wife passed away. Following his parents' deaths, plaintiff Steve Glauser sent Smedley notice that the Glauser children intended to take control and management of the storage sheds from Smedley, consistent with their understanding of the 1979 agreement. Smedley responded by demanding that the Glauser children release the Salmon Property in exchange for his release of the storage shed property.

¶ 8 In the fall of 1994, the Glauser children assumed control and management of the storage shed property, but they refused to release the Salmon property. In response, Smedley recorded notices of interest against both the storage shed property and the Salmon property.

¶ 9 In June 1996, the Glauser children brought this action to quiet title to both the storage shed property and the Salmon property and to recover monetary damages against Smedley for breach of the 1979 agreement. Smedley responded by filing a counterclaim seeking reconveyance of both the storage sheds and the Salmon property and alleging that he had cured his breach of the 1979 agreement through substitute performance, accepted by Melvin Glauser in 1988, in the form of work done on other properties owned by the Glausers and by means of the transfer of three undeveloped lots to the Glausers.

¶ 10 Pursuant to a pre-trial motion in limine, the trial court prevented Smedley from presenting any parol testimony controverting the 1979 agreement and contemporaneous warranty deed conveying the storage shed property to the Glausers. The court also ruled that the Glauser children could present evidence concerning Smedley's general reputation in the community for truthfulness.

¶ 11 At the conclusion of the bench trial, the court held that the 1979 agreement and contemporaneous warranty deed to the storage shed property were clear and unambiguous as to the parties' intent and that a transfer of absolute title by Smedley to the Glausers was contemplated. Therefore, the Glauser children were entitled to a decree quieting title to the storage shed property in their favor.

¶ 12 The trial court also held that Smedley had breached his obligations under the 1979

---

1. On March 13, 1980, Smedley gave the Glausers a warranty deed to the Salmon property. Despite plaintiffs' argument to the contrary, the trial court concluded this was not intended to be a conveyance but rather was given as security for the performance of Smedley's obligations. We see no basis on which to disturb this determination.

agreement and that he owed the Glauser children $71,701.24, plus $41,154.67 in pre-judgment interest. In addition, the trial court held that the evidence Smedley presented concerning his claimed substitute performance in satisfaction of his defaults was insufficient and unreliable, and that he had therefore failed to prove his counterclaim.

¶ 13 As to the Salmon property, the trial court concluded that even though Smedley gave the Glausers a deed to the property, the parties had not intended a transfer of absolute title but only for Smedley to give the Glausers a security interest in place of the $300,000 escrow account. Nonetheless, the trial court denied Smedley's claim to an offset for the Glausers' unauthorized conveyance of 24 acres of that property to Isley. The court held that the consideration paid by Isley for these 24 acres—the release of his agricultural lease encumbering the entire Salmon property—runs with the land and benefits Smedley. Smedley appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 14 Smedley raises four issues on appeal. Initially, Smedley challenges the trial court's exclusion of his parol evidence concerning the parties' 1979 agreement and the warranty deed to the storage shed property Smedley contemporaneously delivered to Glauser Construction Co. "The issue of '[w]hether evidence is admissible is a question of law, which we review for correctness, incorporating a "clearly erroneous" standard of review for subsidiary factual determinations.'" *Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378 (Utah 1995) (citation omitted).

■ ¶ 15 Smedley next argues that in finding that he had breached the 1979 agreement, the trial court improperly disregarded the uncontroverted evidence he presented concerning his claimed substitute performance. "Findings of fact will not be set aside unless they are against the clear weight of the evidence and clearly erroneous[,] with due consideration given to the trial court to judge the credibility of witnesses." *Coalville City v. Lundgren*, 930 P.2d 1206, 1209–10 (Utah Ct.App.), *cert. denied*, 939 P.2d 683 (Utah 1997).

¶ 16 Smedley's third argument is that the trial court improperly received evidence concerning his reputation in the community for truthfulness. This evidentiary ruling is subject to the same standard of review identified in paragraph 14, above.

■ ¶ 17 Finally, Smedley contends that the trial court erroneously denied his claim based on the Glausers' unauthorized conveyance of 24 acres of the Salmon property to Isley. This issue presents legal conclusions, which we review for correctness, according no particular deference to the trial court. *See Young v. Young*, 1999 UT 38, ¶ 15, 979 P.2d 388.

## EXCLUSION OF PAROL EVIDENCE

¶ 18 Smedley argues that, even though both the 1979 agreement and warranty deed indicate he made an absolute conveyance of the storage shed property to the Glausers, he had an oral agreement with Melvin Glauser that the apparent conveyance was intended only as security for his monetary obligations under the 1979 agreement. At trial, Smedley was denied the opportunity to offer testimony to prove this alleged oral agreement. On appeal, he argues that parol evidence is invariably allowed to show that a deed, absolute on its face, has been given for security only. A closer look at the case law shows that Smedley's argument goes too far.

■ ¶ 19 A deed, absolute on its face, is presumed to convey a fee simple title. *See Kjar v. Brimley*, 27 Utah 2d 411, 497 P.2d 23, 25 (1972). Smedley is correct in his initial assertion, however, that a deed "may be shown by parol evidence to have been given for security purposes only; and if such showing be made, equity will give effect to the intention of the parties." *Id.* at 26. The party seeking to show that the deed was intended as security "must show by clear and convincing evidence that the conveyance was actually intended as a mortgage." *Winegar v. Froerer Corp.*, 813 P.2d 104, 110 (Utah 1991). This exception to the rigidity with which deeds are ordinarily construed protects debtors who "frequently execute absolute deeds of conveyance to creditors with

merely an oral understanding that the creditor will hold the deed only as security." *Id.*

¶ 20 The situation is much different, however, when the transaction features not only a deed but also a contemporaneous written agreement stating the terms of the transaction. In that event, the deed will be read in light of the written agreement and will be subject to the established rules of construction concerning such agreements. *See Kjar*, 497 P.2d at 25. In essence, the rule permitting a party to show that a deed was intended only as security must co-exist with other important rules of construction. Chief among these is the pronounced preference for gleaning the parties' intent, whenever possible, from written agreements rather than from self-serving testimony. *See Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.*, 899 P.2d 766, 770 (Utah 1995); *Lee v. Barnes*, 977 P.2d 550, 552 (Utah Ct.App. 1999). Thus, if a party claims a deed was intended as a mortgage, and no written agreement regarding the transaction exists, courts have no choice but to consider parol evidence to determine the parties' intent. On the other hand, if the parties entered into a written agreement at about the same time the deed was given, the court will look first to that agreement in its effort to decide what the parties intended.

¶ 21 Any attempts to vary the unambiguous terms of the contemporaneous written agreement is subject to the parol evidence rule. The parol evidence rule "operates, in the absence of fraud or other invalidating causes, to exclude evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an integrated contract." *Hall v. Process Instruments & Control, Inc.*, 890 P.2d 1024, 1026 (Utah 1995).[2]

¶ 22 The 1979 agreement unambiguously shows that the parties intended an absolute conveyance of the storage shed property to the Glausers. The integrated agreement stated, with our emphasis, that Smedley "*convey[s]* all rights, title, and interest in the [storage shed property]" to the Glausers in exchange for the *conveyance* by the Glausers of other property to Smedley. The agreement also describes the transaction as an "*exchange* of real property" and that "Smedley desires to acquire the Glauser property ... and proposes to *exchange*, as partial payment thereof, the Smedley property." Finally, the agreement stated that upon the death of the Glausers, all of "Smedley's obligations on said property as set forth in this agreement shall cease." This statement is as important for what it does not say as for what it does say—it does not say that the storage shed property was thereupon to revert back to Smedley, an extraordinarily important point to have failed to mention in a detailed agreement if such was intended. In fact, the entire agreement is bereft of any mention of the storage shed property reverting to Smedley.

¶ 23 The clear and precise language of the 1979 agreement, which goes beyond the boiler plate language contained in deeds concerning the absolute nature of a conveyance, is not susceptible to more than one reasonable interpretation, i.e., that it was intended by both sides as an absolute conveyance of the storage shed property, and it thus leaves no room for the presentation of parol evidence to controvert that expressed intent. *See Kjar*, 497 P.2d at 26; *Winegar*, 813 P.2d at 111. Accordingly, the trial court correctly excluded evidence of any contemporaneous oral agreements Smedley allegedly had with Glauser and correctly concluded that "[t]he 1979 Agreement ... is clear on its face and unambiguous in its terms relating to the parties' intent that Defendant Smedley transfer fee title absolute to the [Glausers]."

## EVIDENCE OF SUBSTITUTE PERFORMANCE

¶ 24 Smedley claims that the trial court erred in disregarding his uncontested

---

2. Extrinsic evidence may still be admissible, even if an agreement is found to be integrated, but only in the very limited situations where it is needed to *clarify*-not contradict-any ambiguous terms in the agreement. *See Hall*, 890 P.2d at 1026–27. This exception does not apply to this case because Smedley seeks to materially alter, not merely clarify, the terms of the 1979 agreement. Indeed, Smedley never argues that the 1979 agreement is in any way ambiguous as to the absolute nature of the conveyance. He instead argues that parol evidence should *always* be allowed to show that a deed, absolute on its face, was given for security purposes.

testimony concerning his substitute performance under the 1979 agreement. "Clearly, the fact-finder is in the best position to judge the credibility of witnesses and is free to disbelieve their testimony." *Homer v. Smith,* 866 P.2d 622, 627 (Utah Ct.App.1993), *cert. denied,* 878 P.2d 1154 (Utah 1994). Even where testimony is uncontroverted, a trial court is free to disregard such testimony if it finds the evidence "self-serving and not credible." *Id.* at 627 n. 8.

¶ 25 At trial, Smedley presented uncontroverted evidence, consisting mostly of his own testimony, that he conveyed three unimproved lots to the Glausers and did $94,626 worth of work on two properties owned by the Glausers to remedy his failure to pay property taxes and fund the vacation account under the 1979 agreement. Because Melvin Glauser and his wife were dead at the time of trial, Smedley's testimony concerning Melvin Glauser's alleged acceptance of these substitute payments, while wholly unsubstantiated, was necessarily uncontroverted.

¶ 26 It is undisputed that Smedley transferred three lots to the Glausers and made various improvements to their property. But, against the background of the extensive dealings between Smedley and Glauser over the years, it was far from clear that these two actions were done with the understanding of the parties that they were done to cure Smedley's numerous defaults under the 1979 agreement.

¶ 27 The trial court specifically held that the evidence concerning the transfer of lots was "insufficient and unreliable" to support Smedley's claim. The court found Smedley's self-serving testimony concerning the improvement work equally unpersuasive. The trial court was in the best position to judge Smedley's credibility and was free to disbelieve him. *See id.* at 626–27. The court's decision seems perfectly reasonable given that Smedley presented no documentation showing that Glauser accepted the lots or improvements as substitute performance. We see no error in the court's decision in this regard.

## EVIDENCE CONCERNING SMEDLEY'S REPUTATION

¶ 28 Smedley challenges the trial court's decision to allow two witnesses to testify as to his general reputation for truthfulness in his community. The applicable rule states:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Utah R. Evid. 608(a). "Opinion testimony concerning credibility must be limited to testimony addressing a witness's *general reputation* for truthfulness, leaving the resolution of credibility for the fact-finder." *State v. Hoyt,* 806 P.2d 204, 211 (Utah Ct.App.1991) (emphasis added). As long as the testimony relates only to the general reputation for truthfulness of a witness, it is admissible under the rule.

¶ 29 At trial, plaintiffs presented two character witnesses on rebuttal: John Scott Carter, Layton City Community Development Director, and Beverly Olson, a real estate agent in Davis County. Each testified, in almost identical language, that Smedley did not have a reputation for truthfulness.

¶ 30 Mr. Carter's testimony was as follows:

> Question: Do you know the general reputation of Dale Smedley for truth and veracity in and about the community of Davis County at the present time? Yes or No?

> Answer: Yes.

> . . . .

> Question: Mr. Carter, will you please tell the court whether Mr. Smedley's reputation for truth and veracity is good or bad?

> Answer: Generally his reputation is bad.

¶ 31 Ms. Olsen's testimony mirrored Mr. Carter's:

Question: Do you know the general reputation of Dale Smedley for truth and veracity in and about the community?

Answer: Yes.

Question: Will you please tell the court whether it is good or bad?

Answer: Bad.

¶ 32 The record makes clear that both witnesses stayed within the narrow confines of Utah Rule of Evidence 608(a) and their testimony related only to Smedley's general reputation in the community, without mention of any specific dishonest acts or untruthful statements. The trial court committed no error in receiving this evidence.

## OFFSET FOR WRONGFUL SALE OF SALMON PROPERTY

¶ 33 Finally, Smedley argues that the trial court erred in failing to grant him an offset for the unauthorized sale of 24 acres of the Salmon property.[3] The trial court found that Smedley's conveyance of the Salmon property was given for security purposes and treated the conveyance as an equitable mortgage.[4] Plaintiffs do not appeal this disposition. Therefore, even though the Glausers held legal title to the property, they held it only as security. It follows that the Glausers had no right to convey that property, except with Smedley's consent. Because Smedley never consented to the conveyance of the 24 acres to Isley, the conveyance was wrongful, and Smedley is entitled to damages in the amount of the value of the 24 acres at the time of the wrongful conveyance. Given the wrongfulness of the conveyance, the Glauser children are not entitled to have that amount adjusted to reflect some incidental economic benefit that Smedley received to the rest of his Salmon property by reason of

Isley's early termination of his agricultural lease.

¶ 34 The trial court erred in failing to award Smedley an offset to reflect the lost value of the 24 acres conveyed without his authorization. We remand for the trial court to determine the value of the conveyed property and to modify the judgment accordingly.

## ATTORNEY FEES ON APPEAL

¶ 35 The trial court found Smedley to be in default of the 1979 agreement and awarded plaintiffs their attorney fees and costs pursuant to Paragraph 4 of the 1979 agreement, which provides in relevant part:

Each of the parties agree that in the event of default of either party that the party not in default shall be entitled to reasonable court costs and attorney's fees incurred in the enforcement of this agreement, whether or not suit is commenced.

¶ 36 On appeal, plaintiffs have prevailed on all the issues relating to, or arising out of, Smedley's defaults under the 1979 agreement, including the legal effect of the conveyance of the storage shed property, and as to these issues the plaintiffs are entitled to attorney fees reasonably incurred on appeal. *See Management Servs. Corp. v. Development Assocs.*, 617 P.2d 406, 409 (Utah 1980). As to Smedley's right to an offset for the conveyance of the 24 acres of Salmon property, this issue is outside the scope of the 1979 agreement and its attorney fee provision, and the parties will bear their own attorney fees allocable to this issue. We remand so the trial court may calculate and award plaintiffs their allowable, reasonable attorney fees and costs incurred on appeal.

## CONCLUSION

¶ 37 We affirm the trial court's ruling precluding Smedley from presenting parol evi-

---

3. Although there was some question at trial as to the exact amount of land that was conveyed to Isley by the Glausers, both sides agree on appeal that the amount was 24 acres.

4. There is no inconsistency in the trial court's permitting Smedley to testify that the deed to the Salmon property was intended to be for security only, while precluding him from similarly testifying as to the storage shed property. This is

explained by the fact that what was intended by the deed to the storage shed property is best determined by the parties' extensive and contemporaneous written agreement, while no such written agreement paralleled the Salmon property deed, making recourse to parol evidence necessary once it was claimed the deed to the Salmon property was not really intended to effect an absolute conveyance.

dence concerning the intended effect of the deed of the storage sheds to the Glausers. We also affirm the court's decisions to reject Smedley's testimony concerning alleged substitute performance and to allow evidence concerning Smedley's reputation for truthfulness. We remand so the trial court can: (1) ascertain the value of the 24 acres of Salmon property wrongfully sold by the Glausers and modify the judgment against Smedley to reflect this value as an offset and (2) award the fees and costs plaintiffs reasonably incurred in defending this appeal on all the issues except the one concerning the Salmon property.

¶ 38 WE CONCUR: Pamela T. Greenwood, Presiding Judge, Russell W. Bench, Judge.