# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PETER (PHUC) PHAN ,

Respondent,

v.

POLLUTION CONTROL HEARINGS
BOARD,

Defendant,

CITY OF KIRKLAND,

Appellant.

No. 79392-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 2, 2020

APPELWICK, C.J. — This appeal asks us to determine whether seizure of Phan's vessel by the City was consistent with the statutory requirements of the DVA[1] and whether the Board properly awarded costs under the act. We reverse the Board's finding that the City properly took temporary possession of the vessel under the DVA. We affirm the Board's finding that the City properly took permanent custody of the vessel on November 17. As a result, the City is entitled to recover under the DVA only those costs related to taking permanent custody of the vessel. The Board erred to the extent that it awarded the City other costs. We vacate the order of the Superior Court and remand to the Board to amend its order in accordance with this opinion.

---

[1] Derelict vessels act, ch. 79.100 RCW.

FACTS

Peter (Phuc) Phan is the owner of a 57-foot catamaran. He purchased the vessel in California in 2016 and transported it to Washington. With the help and consultation of various professionals, Phan constructed a second story on the vessel. Phan, a well-known musician, intended to use the vessel for musical excursions around Puget Sound. He had never owned a boat before this vessel.

Phan initially obtained moorage for the vessel through a sublet in the summer of 2017. After the sublet expired, Phan anchored the vessel in Lake Washington, moving it between Juanita Bay and Andrews Bay as allowed by law.[2] He testified that he and his wife were attempting to find permanent moorage for the vessel during this time.

The vessel's anchor proved to be ineffective at securing the vessel in place while anchored in Juanita Bay. From September to October 2017, the King County Sherriff's Department, which the City of Kirkland (City) contracts with to police its Lake Washington waters, received several calls concerning Phan's vessel in Juanita Bay. This led to communications between sheriff's deputies and Phan. The sheriff's department claimed that Phan indicated he had intentionally run the

---

[2] The Seattle Municipal Code (SMC) limits anchorage in Andrews Bay to 72 hours in any one week period. SMC 16.40.030(F). The Kirkland Municipal Code (KMC) limits anchorage in Juanita Bay to 72 hours in any one week period or 216 hours in any one month period. KMC 14.16.030. Prior to the passage of this limitation, the City of Kirkland's waters were subject only to state regulations, which allowed for a boat to be docked for up to 30 days, but not longer than 90 days in a 365 day period. WAC 332-52-155.

aground.[3] A sheriff's deputy then reached out to the Department of Natural Resources (DNR) to determine the legality of running a boat aground in Lake Washington. The DNR advised the deputy that grounding a vessel in Lake Washington, intentionally or not, was a violation of RCW 79.02.300.

On October 6, 2017, Phan's vessel again became grounded in Juanita Bay. Phan contacted his boat towing insurance provider, Tow Boat US, to have the vessel towed. Once the vessel was dislodged, it began to take on water. The towing company regrounded the vessel about 70 feet from a pier owned by the City. Phan then contacted the sheriff's department to report that the vessel was taking on water. Concerned that the top heavy construction of the vessel would cause it to tip over, deputies boarded the vessel and began dewatering efforts. Deputies were able to keep the vessel from capsizing, and Phan was able to enlist a commercial service, Aqua Dive Service, to fully dewater the vessel and plug the leak. However, Aqua Dive was unable to tow the boat away due to worsening weather conditions. The vessel was tied to the City's pier. Sherriff's deputies informed Phan that he needed to remove his vessel the next day, when it was safe to do so.

By the next morning, the vessel had sunk and was resting on the lakebed in approximately two and a half feet deep water. Considerable damage had been done to the City's pier. Sheriff's deputies again contacted Phan, informing him that the vessel needed to be moved as soon as possible. Two days later, on October

---

[3] Phan claims he never intentionally ran his boat aground and that he was trying to communicate that he was not working hard to get it back on the water after it had unintentionally grounded.

9, the vessel had not been moved. Deputies informed Phan that the vessel would be impounded if it was not moved immediately.

Phan then contracted with Seacrest Marine to move his vessel. It arrived on scene and developed a plan to move the vessel, which could not move under its own power and could not be towed in the condition it was in at that time. It stated that it would begin removal efforts the next day. However, Seacrest Marine did not arrive the next day, and could not be reached by phone.

The City called Blackwater Marine LLC, a diving and marine contractor with whom it had an existing relationship. When Blackwater arrived, sheriff's deputies asked if it would give Phan a quote to have the vessel refloated. Blackwater informed Phan that it would charge him $12,000 to refloat the vessel. Phan was unable to pay that amount, so the City directed Blackwater to impound the vessel.

On October 11, 2017, with Phan present, Blackwater completed refloating the vessel and towed it to the Lake Washington ship canal for impound. The next day, Blackwater requested a condition and damage survey on the vessel from Rhumb Line Maritime LLC. Rhumb Line determined that the vessel had sustained significant damage. In the opinion of the surveyor, the vessel was a "'total loss due to the structural stern damage and from the flooding.'" After some difficulty, Blackwater was eventually able to store the vessel at Lake Union Dry Dock.

By October 17, 2017, Phan had still not redeemed his vessel from impound. Representatives from the City and the King County Sherriff's Department met with Troy Wood of the DNR to discuss the vessel. At that time, the City was made

aware of the process to seize a vessel under the derelict vessels act, chapter 79.100 RCW (DVA). The City then made the decision to utilize this process.

That same day, the City prepared a notice of intent to obtain custody, laying out the reasons for the City's seizure of the vessel, and indicated that the City intended to take permanent possession on November 16. The notice included information on what the owner needed to do to maintain possession of the vessel, and indicated that the owner could appeal the order to the Pollution Control Hearings Board (Board). The City posted the notice on the vessel that day, and sent the notice to be posted on the DNR website. Either later that evening or the next morning, a representative of the DNR confirmed that the notice had been posted on its website. The City also sent Phan a letter by certified mail on October 27, 2017. The letter indicated that the City intended to take custody of Phan's vessel on November 17, provided the City's reasons for taking possession, and notified Phan of his ability to appeal the decision to the Board. The City then posted the notice in the Seattle Times from November 10 through 16, 2017.

On December 15, 2017, Phan submitted his appeal to the Board. In his initial appeal, he did not dispute the City's reasons for taking custody of the vessel. Rather, he placed blame for the damages on Tow Boat US, the company he hired to tow his vessel after it was grounded in Lake Washington on October 6. He also challenged the reasonableness of the fees charged by Blackwater to impound his vessel. He later indicated to the Board that he was challenging both the City's justification for taking possession of his vessel and whether it had followed proper procedures in doing so.

5

In its response, the City contended that it had taken emergency possession of the vessel under the DVA on or about October 11. The City further contended that it was justified in taking permanent custody of the vessel. Last, it argued that the fees Blackwater charged to impound the vessel were reasonable.

The Board held a hearing on the matter on January 12 and 17, 2018. At the hearing, the City argued that the initial seizure was made pursuant to the Kirkland Municipal Code rather than the DVA. After the vessel had been impounded, the City contended that it had started the process of taking custody under the DVA after meeting with the DNR on October 17, 2017.

The Board found that it did not have jurisdiction to address the initial seizure, but otherwise ruled in favor of the City. It found that the City correctly took temporary possession of the vessel on October 17. It further found that the City substantially complied with the DVA's notice requirements, and that Phan's vessel was derelict under the DVA. Therefore, the Board concluded that the City could rightfully take permanent custody of the vessel on November 17.[4] Last, the Board determined that the costs incurred by the City from October 17 forward were reasonable, and that Phan was liable for those costs. It found that it did not have jurisdiction to address costs incurred prior to October 17.

---

[4] Though the City indicated in its notice and letter to Phan that it would be taking possession of the vessel on November 16, the Board awarded custody beginning on November 17. This is apparently due to the Board's mistaken belief that the City's letter stated that it intended to take custody on November 17, rather than November 16. Neither side challenges this error on appeal. A hearing officer's unchallenged findings of fact are verities on appeal. In re Disciplinary Proceeding Against Conteh, 187 Wn.2d 793, 800, 389 P.3d 591 (2017). We therefore accept the Board's finding.

Phan petitioned for review of the Board's decision in King County Superior Court. He argued that the City had violated his due process rights by failing to comply with the DVA's notice requirements. He also argued that the Board erred in finding that the costs associated with the taking were reasonable. The City cross appealed the portion of the order that held that the Board did not have jurisdiction over costs incurred prior to October 17. The superior court reversed the Board's order, finding that the City failed to follow the procedural requirements of the DVA and violated Phan's due process rights. The superior court reversed the decision of the Board and dismissed the City's cross appeal. The City appeals.

## DISCUSSION

This appeal is brought pursuant to the Washington Administrative Procedures Act (APA), chapter 34.05 RCW. We review the decision of the Board, not the superior court. See City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wn.2d 38, 45, 956 P.2d 1091 (1998). In reviewing the Board's order, we apply the standards of the APA directly to the record before the Board, sitting in the same position as the superior court. Id. We will overturn the Board's decision if it violates constitutional provisions on its face or as applied, or if the Board erroneously interpreted or applied the law. RCW 34.05.570(3)(a), (d). We review issues of statutory construction and constitutionality de novo. State v. Evans, 177 Wn.2d 186, 191, 298 P.3d 724 (2013).

The DVA, provides a framework for governments to address abandoned or derelict vessels found in their waterways. It is not intended to be the exclusive mechanism or remedy. RCW 79.100.020. It does not limit a government's

7

authority to otherwise regulate such vessels. RCW 79.100.020, .080. It provides a procedure for taking permanent custody of an abandoned or derelict vessel. RCW 79.100.030, .040(1). It also provides a procedure for taking temporary possession in certain emergency situations. RCW 79.100.040(3). It provides for redemption of a vessel which has been seized and for an administrative appeal of an attempt to take custody. RCW 79.100.120. When a government has followed the statutory requirements, it is entitled to recover all reasonable and auditable costs associated with obtaining custody of the vessel. RCW 79.100.060(1). Attorney fees are available to the prevailing party on judicial review of a Board decision. RCW 79.100.120(2)(a).

Phan has lost his boat and been assessed costs. The City has been denied a portion of the costs it sought to recover. Resolution of the cost issue requires a determination of the correctness of both the temporary taking of the vessel and the permanent custody of the vessel under the DVA. Whether the City lawfully impounded the vessel pursuant to its municipal code is outside the Board's jurisdiction, and therefore not before us. RCW 43.21B.110(1); Redmond, 136 Wn.2d at 45. Whether Phan is entitled to damages for the loss of his vessel, assuming it was unlawfully taken is outside the board's jurisdiction, and therefore is not before us. RCW 43.21B.110(1); Redmond, 136 Wn.2d at 45. Though constitutional arguments are made, this case is a matter of statutory interpretation and application.

Phan argues the City did not follow the DVA procedures and violated his due process rights. Therefore, he should not be liable for costs under the DVA.

8

The City makes two arguments. First, it argues that its seizure of Phan's vessel did not violate his due process rights. Second it argues that the Board should have held Phan liable for all costs associated with impounding and storing the vessel, including costs incurred prior to October 17. Both parties seek attorney fees incurred in the judicial proceedings.

I.  The Temporary Taking

   A. The October 11 Impound

The Board found that it had no jurisdiction to address either the propriety or costs of the City's October 11 impoundment of Phan's vessel, because that action was taken pursuant to the Kirkland Municipal Code. The City argues this was error because the DVA allows it to recover all costs associated with impoundment of the vessel, regardless of whether the initial seizure was made pursuant to the DVA or to the Kirkland Municipal Code. Phan argues this was error because the initial seizure violated his due process rights and should be overturned.

The Board is given limited jurisdiction to hear and decide appeals by RCW 43.21B.110. That jurisdiction includes appeals of decisions by a public entity to take temporary possession of a vessel under DVA. RCW 43.21B.110(1)(n). The statute makes no mention of authority to review decisions of a public entity to take custody of a vessel pursuant to its municipal code. RCW 43.21B.110(1).

Before the Board, the City acknowledged that it impounded Phan's vessel under its municipal code. The City now argues, however, that it is irrelevant that it seized the vessel under the Kirkland Municipal Code, because it objectively

complied with the requirements for taking temporary possession under the DVA. But, the record does not support this claim.

The DVA requires that an authorized public entity make a reasonable attempt to consult with the DNR or the United States Coast Guard prior to taking temporary possession of a vessel to ensure other remedies are not available. RCW 79.100.040(3)(b). The City made no efforts to contact the DNR to ask if other remedies were available before impounding the vessel.[5] The City did not meet with the DNR to discuss options to seizure of the vessel until October 17.[6]

At oral argument, the City argued that its failure to meet with the DNR is not relevant because it was a failure "to comply with some procedural requirement" that did not automatically violate Phan's right to procedural due process. This argument is in part a response to Phan's assertion that his due process rights were violated. But, we need not reach the due process issue. The threshold question is whether the City complied with requirements of the statute. It did not. The failure to confer with the DNR prior to seizing the vessel is not an irrelevant procedural violation.

---

[5] This was likely due to a lack of awareness of the statute prior to its October 17 meeting with the DNR. Lieutenant Saloum, the City's representative during this process, testified that the October 17 meeting with the DNR is "when we were informed of the DNR process."

[6] The City points to a September 9 communication between sheriff's deputies and the DNR. This communication would not be sufficient to satisfy the requirements of the DVA. Sheriff's Deputy Mark Rorvik testified that he e-mailed the DNR on that date to inquire as to the legality of Phan grounding his vessel. The DVA requires an attempt to contact the DNR to ensure that remedies other than a temporary seizure of the vessel are not available. RCW 79.100.040(3)(b).

The requirement to meet with the DNR is a substantive protection for the owner of the vessel designed to ensure that other options are not available prior to seizure. The statute provides,

> (a) Any authorized public entity may tow, beach, or otherwise take temporary possession of a vessel if the owner of the vessel cannot be located or is unwilling or unable to assume immediate responsibility for the vessel and if the vessel:
>
> > (i) Is in immediate danger of sinking, breaking up, or blocking navigational channels; or
>
> > (ii) Poses a reasonably imminent threat to human health or safety, including a threat of environmental contamination.
>
> (b) <u>Before taking temporary possession of the vessel, the authorized public entity must make reasonable attempts to consult with the department or the United States coast guard to ensure that other remedies are not available.</u> The basis for taking temporary possession of the vessel must be set out in writing by the authorized public entity within seven days of taking action and be submitted to the owner, if known, as soon thereafter as is reasonable. If the authorized public entity has not already provided the required notice, immediately after taking possession of the vessel, the authorized public entity must initiate the notice provisions in subsection (1) of this section. The authorized public entity must complete the notice requirements of subsection (1) of this section before using or disposing of the vessel as authorized in RCW 79.100.050.

RCW 79.100.040(3) (emphasis added). The language of (b) is an express limitation of the taking of temporary possession authorized in (a). It requires reasonable efforts to contact a third-party with expertise to determine that there are no other options. It does not contain any exceptions. It does not say, "unless the consultation would have been futile." It is not ambiguous. We have no authority to add those words to the statute under the guise of interpretation. <u>See</u> <u>Vita Food Prods., Inc. v. State</u>, 91 Wn.2d 132, 134, 587 P.2d 535 (1978).

11

We affirm the Board's finding that it lacked jurisdiction to rule on the propriety of the October 11 impound under the Kirkland Municipal Code.[7] Because the impound was not a taking of temporary possession in compliance with the DVA, the Board properly denied the City's request for costs associated with the October 11 impound.

B. Temporary Possession on October 17

The Board ruled that the City correctly took temporary possession of Phan's vessel under the DVA on October 17. Phan argues the Board was in error.

An authorized public entity may take temporary possession of a vessel if the owner is unable to assume responsibility and the vessel poses a reasonably imminent threat to human health or safety, including a threat of environmental contamination. RCW 79.100.040(3)(a). In order to take temporary possession, the City must first meet with the DNR or the United States Coast Guard to ensure other remedies are not available. RCW 79.100.040(3)(b). It must set out in writing the basis for taking possession within seven days and send these reasons to the owner "as soon thereafter as is reasonable." RCW 79.100.040(3)(b).

Phan argues that whatever "emergency" existed when the vessel was initially seized on October 11, no longer existed on October 17. He is correct. The Board found that the vessel created a hazard to the public and the environment when the City seized it under its municipal powers on October 10. It made no findings that the vessel posed an imminent threat when the City sought temporary

---

[7] As a result, Phan's argument that the taking under the city impound statute violated his constitutional due process rights was not decided by the Board and is not before this court.

possession on October 17. The record makes clear that on that date, the boat was safely dry-docked at Lake Union. No imminent threat existed on October 17 so the City could not have been in compliance with temporary taking provision of the DVA as of October 17.

Representatives of the City and the King County Sheriff's Department met with the DNR on October 17 and discussed the possibility of seizing the vessel under the DVA. The City's representative described the meeting as being "informed of the DNR process" and being "provided the outline and guidelines for the dates." The testimony does not clearly establish whether remedies other than temporary possession, as required by RCW 79.100.040(3)(b), were discussed at the October 17 meeting. But, the meeting with DNR on October 17 could not effectively determine if there were alternatives to seizure, because the vessel had long been seized. This meeting did not satisfy the statutory requirement to confer before seizing.

That same day, the City posted a written notice on the vessel setting out its basis for taking possession. Ten days later, on October 27, the city sent a letter to Phan by certified mail giving notice of taking possession and the basis for that possession. Phan contends that the City failed to send him the letter "as soon thereafter as is reasonable" because the City did not mail the notice until October 27. The statute does not define what a reasonable amount of time is. See RCW 79.100.040(3)(b). The Board concluded that that the letter was sent within a reasonable time. Phan has not established why 10 days was an unreasonable delay nor how he was harmed.

13

The Board erred in finding the City could take temporary possession of the vessel under the DVA on October 17. Therefore, it erred in awarding the City any costs associated with taking or maintaining temporary possession of the vessel.

## II. Permanent Custody on November 17

The DVA gives an authorized public entity authority to store, strip, use, auction, sell, salvage, scrap, or dispose of a derelict vessel. RCW 79.100.030(1). Prior to exercising that authority, the entity must obtain custody of the vessel. RCW 79.100.040(1). In order to obtain custody of the vessel, the entity must,

> (a) Mail notice of its intent to obtain custody, at least twenty days prior to taking custody, to the last known address of the previous owner to register the vessel in any state or with the federal government and to any lienholders or secured interests on record. A notice need not be sent to the purported owner or any other person whose interest in the vessel is not recorded with a state or federal agency;

> (b) Post notice of its intent clearly on the vessel for thirty days and publish its intent at least once, more than ten days but less than twenty days prior to taking custody, in a newspaper of general circulation for the county in which the vessel is located; and

> (c) Post notice of its intent on the department's internet web site on a page specifically designated for such notices. If the authorized public entity is not the department, the department must facilitate the internet posting.

Id. The Board found that the City accomplished this custody on November 17, 2017.

### A. Was the Vessel Derelict?

The Board found that Phan's vessel was derelict as defined by the DVA. Under RCW 79.100.010(5),

> "Derelict vessel" means the vessel's owner is known and can be located, and exerts control of a vessel that:

14

(a) Has been moored, anchored, or otherwise left in the waters of the state or on public property contrary to RCW 79.02.300 or rules adopted by an authorized public entity;

(b) Has been left on private property without authorization of the owner; or

(c) Has been left for a period of seven consecutive days, and:

(i) Is sunk or in danger of sinking;

(ii) Is obstructing a waterway; or

(iii) Is endangering life or property.

The Board found that Phan was exerting control over the vessel, that he had run it aground in Lake Washington contrary to RCW 79.02.300, and that it had been tied to the City's pier in a way that was not permitted by the Kirkland Municipal Code.

The findings that the boat was aground in Lake Washington and that it had been tied to the City's pier are supported by substantial evidence. Both facts are recorded in the King County Sheriff's incident report. Sheriff's deputies also testified to these facts. There are photos in the record of the same.

RCW 79.02.300(1) forbids a person from occupying public lands or causing waste or damage to the same without authorization. Phan's vessel was in public lands on Lake Washington, and had caused damage to the lakebed and the City's pier. It was there without authorization. The Kirkland Municipal Code also forbids securing a vessel in City waters for longer than 72 hours. KMC 14.16.030. Phan's vessel was aground on the lakebed for at least seven consecutive days from October 5 through 11.[8] Sheriff's deputies had informed Phan that he was not

---

[8] The Kirkland Municipal Code has an exception for emergency situations, and Phan's vessel was initially docked to the pier on October 6 because it was unsafe to move due to weather conditions. KMC 14.16.030(3). However, Phan was informed that he needed to move his vessel the next day. Phan's vessel

15

authorized to have his boat at that location, and that it needed to be moved. Therefore, Phan's vessel was a derelict vessel in public waters on October 6, when the City seized it.

The DVA contemplates that temporary possession may need to be taken by a government prior to seeking permanent custody. RCW 79.100.040(3). And, the DVA does not cut off impound of a vessel under other law prior to seeking permanent custody under the act. RCW 79.100.020. If the vessel was derelict at the time of taking temporary possession or impound, it is a derelict vessel for the purposes of obtaining permanent custody.

We affirm the Board's finding that Phan's vessel was derelict under RCW 79.100.010(5).

B. Notice Provisions

Phan contends that the City failed to comply with the DVA's notice provisions. The DVA has a variety of notice provisions to ensure that the owner of a vessel is able to challenge a public entity's determination that their vessel is derelict. RCW 79.100.040(1). Prior to taking permanent custody of a vessel, the authorized public entity must,

> (a) Mail notice of its intent to obtain custody, at least twenty days prior to taking custody, to the last known address of the previous owner to register the vessel in any state or with the federal government and to any lienholders or secured interests on record. A notice need not be sent to the purported owner or any other person whose interest in the vessel is not recorded with a state or federal agency;

---

nevertheless remained until October 11. This was due not to the initial weather emergency, but due to Phan's inability to move the vessel.

(b) Post notice of its intent clearly on the vessel for thirty days and publish its intent at least once, more than ten days but less than twenty days prior to taking custody, in a newspaper of general circulation for the county in which the vessel is located; and

(c) Post notice of its intent on the department's internet web site on a page specifically designated for such notices. If the authorized public entity is not the department, the department must facilitate the internet posting.

RCW 79.100.040(1)(a)-(c).

The City partially complied with notice requirements. It sent a notice of intent to obtain custody to Phan by certified mail on October 27, twenty one days prior to obtaining custody. Phan received the notice on November 2.[9] The City also posted the notice on the DNR website beginning on October 17 or 18. It physically posted notice on the vessel on October 17. However, the City did not comply with the newspaper provision of subsection (b).

The City published a notice of intent to obtain custody of the vessel in the Seattle Times from November 10 through 16. The DVA requires publishing for at least one day between ten and twenty days prior to the public entity taking custody. RCW 79.100.040(1)(b). The City took custody of the vessel on November 17. Thus, the posting took place for seven days immediately preceding when the City took custody, rather than between ten and twenty days before it took custody as the DVA requires. RCW 79.100.040(1)(b).

Phan does not allege a deprivation of notice or right to be heard. He had actual notice and timely appealed. Nonetheless, Phan contends that the lack of

---

[9] That Phan was unable to sign for the certified letter until this time is immaterial. The statute requires only that the notice be mailed at least twenty days prior to taking custody. RCW 79.100.040(1)(a).

strict compliance with the DVA's notice provisions violates his due process rights. The Board found that the City substantially complied with the notice provisions.

A minor procedural error does not necessarily rise to the level of a due process violation. State v. Storhoff, 133 Wn.2d 523, 527, 946 P.2d 783 (1997). Phan must allege that the error deprived him of notice or an opportunity to be heard. Id. at 527-28. He argues instead that his due process rights were violated because the language of the statute is mandatory. This is not sufficient to establish a constitutional due process violation.

The Board concluded that the purpose of the DVA's notice provisions is to apprise the owner and lienholders that an authorized public entity intends to take custody of the vessel. It is clear that the multiple notice provisions for taking permanent custody are designed to create redundancies to ensure that notice is effectuated. That purpose is met when actual notice is given. Failure to fully carry out one of these redundancies can therefore be considered a minor procedural violation for due process purposes and substantial compliance for statutory purposes. Here, Phan received notice of the City's intentions when he received the notice by certified mail. Phan was then able to appeal the City's decision to take custody of the vessel, as contemplated by the statute. RCW 79.100.120. Accordingly, he was given an opportunity to be heard at a hearing before the Board.

The Board properly invoked and applied the substantial compliance standard in determining that the City substantially complied with the DVA's notice

provisions. The Board did not err in concluding that the City properly took permanent custody of Phan's vessel on November 17.

III. Costs

The DVA requires the owner of a derelict vessel to reimburse the public entity that seizes their vessel "for all reasonable and auditable costs associated with the removal or disposal of the owner's vessel under this chapter." RCW 79.100.060(1) (emphasis added).

The City also did not properly take temporary possession of the vessel under the DVA on October 11 nor on October 17. See supra, Part II. Therefore, the Board erred in awarding the City costs incurred in taking temporary possession of the vessel. RCW 79.100.060(1). Recovery of any costs of impound under the City's municipal code, and the reasonableness of those costs, are outside the Board's jurisdiction and therefore not before this court. RCW 43.21B.110(1); Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wn.2d at 45.

The City properly took permanent custody on November 17. We affirm that Phan must reimburse the City for all reasonable and auditable costs associated with obtaining permanent custody and disposal of the vessel. RCW 79.100.060.

IV. Attorney Fees

Each side requests attorney fees as the prevailing party on appeal under RAP 18.1, or as the substantially prevailing party on appeal under RAP 14.2. The DVA entitles a prevailing party in litigation to reasonable attorney fees and costs. RCW 79.100.120(2)(a).

Phan has prevailed on the temporary possession issue. The City has prevailed on the permanent custody issue. Neither party is a substantially prevailing party. Neither party is awarded attorney fees on appeal either at the superior court or the Court of Appeals.

We vacate the decision of the superior court. We remand to the Board to amend its order consistent with this opinion.

WE CONCUR: